Filed 7/11/13  P. v. Corral CA3

**NOT TO BE PUBLISHED**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Glenn)

----

| | |
|---|---|
| THE PEOPLE, | C069934 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 10NCR08513, 11NCR08683) |
| v. | |
| DYLAN SCOTT CORRAL, | |
| Defendant and Appellant. | |

Defendant Dylan Scott Corral appeals his conviction for making criminal threats against his girlfriend, Jessica A.  He contends (1) the trial court erred in denying his motion for acquittal; (2) there was insufficient evidence to sustain his conviction; and (3) the clerk's probation minute order reflects the incorrect court facility fee.  The People concede on all three issues.  We find the first two concessions improvidently given and do not accept them.  There was sufficient evidence to support the conviction and the trial court did not err in denying the motion for acquittal.  We agree, however, the clerk's

1

probation minute order does not accurately reflect the judgment orally imposed and shall order it modified. We affirm the judgment.

## FACTUAL BACKGROUND

In December 2010, defendant and his girlfriend Jessica were staying in a tent in her parent's front yard. Defendant was intoxicated and behaving aggressively. Because defendant was drunk, Jessica was afraid of him. They began arguing and defendant was throwing their things out of his truck into the yard. Jessica told defendant to leave. She went into her parent's home and locked the door. When Jessica told defendant she was going to call 911, he took a metal bar out of the truck, raised it in a threatening manner and said he would break down the door and kill her before the police arrived. Jessica's parents called the police. Jessica told police defendant was mentally unstable, that when he "snaps, it's really hard to get him out of it" and she was in fear for her safety.

About three months later, defendant, his friend Scott, and Jessica were staying at Scott's father's house. Scott left. Defendant and Jessica were drinking and got into an argument. During the argument, defendant broke a radio because he was angry at Jessica and put a hole in the door. Scott's father, Edwin Verry, heard defendant and Jessica yelling and arguing. Defendant came into the house, kicked Verry's dog and grabbed a hammer. He ran back outside toward Jessica with the hammer held in an upright, cocked and threatening position. In an angry loud voice, defendant said, "You fucking bitch."[1] Jessica was backing away from defendant. Verry yelled at defendant to put the hammer down and calm down. Defendant stopped about five feet from Jessica.

Verry called Scott and told him that because of their behavior, specifically the fighting, kicking his dog, and defendant's chasing Jessica, defendant and Jessica were not

---

[1] In the police report, Verry told Detective Dan Blair defendant said, "I'll kill you, bitch" while holding the hammer. However, that statement was not admitted into evidence.

welcome to stay at his home. While he was on the phone Verry heard defendant say, "I'm going to stab you." When Verry asked defendant who he was going to stab, defendant answered, "Scott." Verry told defendant he was not going to stab anyone and to sit down. Verry tried to diffuse the situation and calm defendant down. Scott and his girlfriend, Danielle Nielsen and another friend, Robert Combs, came to the house. The group went to work helping Verry dig an irrigation trench. Jessica and defendant were arguing the entire time.

Danielle took Jessica into town to get some food and noticed a bruise on her neck. She asked Jessica about the bruise, and Jessica told her that defendant had choked her and slammed her to the ground.

After Danielle and Jessica returned, Scott, Robert, defendant and Jessica drank alcohol and smoked marijuana. Defendant and Scott also took a Xanax. Later, defendant and Jessica were in the guest house and Danielle heard them arguing and screaming. Defendant was using a "vicious" tone of voice and grabbing Jessica. Jessica came out and asked Danielle to get her away from the house. They got into Danielle's car and tried to leave, but defendant ran out and punched out the passenger door window. Glass hit Danielle in the face and cut her lip. Danielle and Jessica fled from the car and defendant got in and drove off. Scott ran after him and defendant turned the car around, drove back toward the house and Scott. Scott had to jump out of the way to avoid being hit by the car. Defendant then crashed the car into a tree.

Defendant got out of the car. He and Scott wrestled briefly, then defendant ran off, screaming "I'm going to kill you" at everyone. Scott went into the house and armed himself with a machete. Defendant picked up a shovel and yelled, "Where the fuck is she? I'll fucking kill you." Defendant ran at Scott, swinging the shovel. Scott knocked defendant down and defendant gave up the fight.

3

## PROCEDURAL HISTORY

Defendant was charged with making a criminal threat against Jessica in December 2010[2] (Pen. Code, § 422),[3] three counts of assault with a deadly weapon (*id*., § 245, subd. (a)(1)), four counts of making criminal threats (*id*., § 422), cruelly beating a dog (*id*., § 597, subd. (b)), carjacking (*id*., § 215, subd. (a)), vehicle theft (Veh. Code, § 10851) and vandalism (Pen. Code, § 594, subd. (a)). One of the assault charges was as against Jessica with the hammer (count I ), one against Jessica with a shovel (count II), and one against Scott with the shovel (count III ) ). The criminal threats charges were against Jessica (count IV ), Verry (count V ), Scott (count VI ) and Danielle (count VII ).

At the close of the prosecution's case, defendant made a motion for acquittal (§ 1118.1) as to the criminal threats against Jessica with the hammer, the criminal threats against Verry, and beating the dog. In response, the prosecution argued Verry had testified that defendant approached Jessica with the hammer raised in an aggressive position and she retreated from him, and that Verry testified defendant had "shouted something along the lines of 'I'll kill or fuck you, I'll kill you.' . . . And those words, his motions, and the way the defendant was holding the hammer, convey a threat . . . ." Defense counsel argued Jessica did not hear a threat or see defendant with the hammer, thus no threat was communicated. The court granted the motion as to the threat to Verry (count V) and beating the dog (count VIII), but denied the motion as to threat to Jessica. No additional prosecution evidence was put forward after the motion.

At closing argument, the prosecution repeatedly argued, without objection, that Verry had testified that defendant threatened Jessica by stating, "I'll kill you" as he came

---

[2] This count was charged in case No. 10NCR08513, which was consolidated with case No. 11NCR08683.

[3] Undesignated statutory references are to the Penal Code.

4

toward her with the hammer. Defense counsel again argued there was insufficient evidence Jessica heard the threat.

The jury found defendant guilty of the December 2010 criminal threat against Jessica, assault with a deadly weapon against Scott with the shovel, simple assault as a lesser included offense against Jessica, criminal threats against Jessica, Scott and Danielle, vehicle theft and vandalism. The jury found defendant not guilty of assault with a deadly weapon against Jessica with the shovel and carjacking. The trial court suspended imposition of sentence and granted defendant probation. Various fines and fees were imposed, including a court facilities fee (Gov. Code, § 70373) "on every count." The clerk's probation minute order reflects the imposition of a court facility fee of $280.

## DISCUSSION

### I. Sufficient Evidence Supports the Conviction

Defendant contends there was insufficient evidence to support his conviction for making criminal threats to Jessica when he ran at her with the hammer and said, "You fucking bitch." He also contends the trial court erred in denying his motion under section 1118.1 to dismiss that charge on the same alleged lack of evidence. His specific complaint is that the evidence that defendant "approached Jessica holding a hammer and stated in a loud voice 'You fucking bitch' " is not sufficient "to show that [defendant] verbally communicated a threat that would result in death or great bodily injury to Jessica." Defendant substantially understates the evidence.

In ruling on a motion for judgment of acquittal under section 1118.1, the trial court applies the same standard as an appellate court in reviewing the sufficiency of the evidence to support a conviction. On appeal, we independently review the trial court's section 1118.1 ruling to determine whether the evidence was sufficient when the motion

5

was made to support a conviction. (*People v. Whalen* (2013) 56 Cal.4th 1, 55.) Thus, as to both of defendant's claims regarding the criminal threats charge, "we review the entire record in a light most favorable to the judgment to determine whether it discloses substantial evidence." (*People v. Cole* (2004) 33 Cal.4th 1158, 1223-1224.) "Substantial evidence is defined as 'evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.' " (*People v. Whalen*, *supra*, 56 Cal.4th at p. 55.)

"[T]o prove the offense of making criminal threats under section 422[,] [t]he prosecution must prove '(1) that the defendant "willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person," (2) that the defendant made the threat "with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out," (3) that the threat . . . was "on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety," and (5) that the threatened person's fear was " 'reasonabl[e]' under the circumstances." (*In re George T*. (2004) 33 Cal.4th 620, 630.) Defendant's sole challenge to the sufficiency of the evidence is as to the first element, whether he made a threat to commit a crime that would result in bodily injury or death to Jessica.

"[S]ection 422 requires that the communication must be sufficient 'on its face and under the circumstances in which it is made' to constitute a criminal threat." (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 860.) Threats are judged in their context and not solely on the specific words spoken. (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1014.) Where words, conduct, and gestures occur as part of a continuous incident, we analyze

them together to assess the threat communicated.  When the language used is ambiguous, we also consider the defendant's mannerisms and affect, and the actions involved in making the threat as well as subsequent actions taken by the defendant.  (*Solis*, at p. 1013; *People v. Franz* (2001) 88 Cal.App.4th 1426, 1442, 1446.)  In addition, we consider the prior relationship and history between the parties.  (*In re Ricky T*. (2001) 87 Cal.App.4th 1132, 1137-1138; *People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1340.)  "A communication that is ambiguous on its face may nonetheless be found to be a criminal threat if the surrounding circumstances clarify the communication's meaning." (*In re George T*., *supra*, 33 Cal.4th at p. 635.)

The words "You fucking bitch" standing alone and considered in a vacuum do not establish a criminal threat.  But those words are not all there is to this case.

Approximately three months prior to running at her with the hammer, defendant had been drinking and got into an argument with Jessica.  During that argument he was destructive of personal property, retrieved a metal bar, raised it in a threatening manner, threatened to break down a door and kill Jessica.  A few days before the fight at Verry's home, defendant choked Jessica and slammed her to the ground.  At the Verrys', defendant was again drinking and fighting with Jessica.  He was destructive of personal property, damaged a door and then retrieved a hammer.  He ran toward Jessica holding the hammer, upright, in a cocked and threatening position and angrily yelled at her "You fucking bitch."  After more drinking and taking drugs, Jessica and defendant continued arguing, while defendant grabbed her and used a "vicious" tone of voice.  As Jessica tried to leave, defendant charged the car and punched out the car door window.  He then drove the car directly at Scott.  When he got out of the car, he picked up a shovel and screamed, "I'm going to kill you,"  "Where the fuck is she?  I'll fucking kill you" at everyone.  Defendant and Jessica argued through the entire incident.  Thus, in addition to the words, in this case there are:  threatening gestures with a hammer; a relationship with prior

threats and violence; a previous incident involving similar circumstances of intoxication, property destruction and a threat while brandishing a metal tool; and, subsequently escalating threats and violence directed at Jessica and others trying to help her. These surrounding circumstances provide a context that clarifies the meaning of defendant's words and makes clear they were indeed a threat. This is sufficient evidence to support a conviction for criminal threats and the trial court properly denied the motion for acquittal.[4]

## II. Clerk's Probation Minute Order Must be Corrected

Defendant contends the clerk's probation minute order incorrectly reflects the court facility fee imposed was $280. He contends since the court facility fee is $30 per conviction (Gov. Code, § 70373) and defendant was convicted of seven counts, the fee should only be $210. Defendant is correct. The oral pronouncement of judgment controls over the clerk's minute order. Any discrepancy between the two is presumed to be a clerical error, which can be corrected at any time to reflect the court's oral

---

[4] As defendant notes, the record reflects that the parties apparently mistakenly believed Verry had testified at trial consistent with his statement to police officers, that defendant shouted at Jessica, "I'll kill you." Defendant contends although the jurors "may have remembered [the testimony] differently, . . . [they] also mistakenly believed that the record contained . . . evidence that [defendant] stated, 'I'll kill you.' " Defendant provides no evidence of such confusion or mistake by the jury and makes no claim of either prosecutorial or juror misconduct. The trial court instructed the jury pursuant to CALCRIM Nos. 104, 200, and 222 that the jury was to decide the facts of the case based only on the evidence, that the attorneys' statements were not evidence, that the jury must follow the law as given by the court and ignore contradictory statements by the attorneys, and that the jury could ask for the court reporter's transcript to be read back if it felt that was necessary to resolve any conflicts or confusion. We presume the jury relied on these instructions, not the attorneys' arguments, in convicting defendant. Furthermore, we presume " 'the jury treated the court's instructions as statements of law, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade.' " (*People v. Morales* (2001) 25 Cal.4th 34, 47, quoting *People v. Sanchez* (1995) 12 Cal.4th 1, 70.)

8

pronouncement.  (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2; *People v. Mitchell* (2001) 26 Cal.4th 181, 183, 185-188; *People v. Mesa* (1975) 14 Cal.3d 466, 471.) Accordingly, we will order the minute order corrected to reflect the oral pronouncement of judgment.

## DISPOSITION

The trial court is directed to prepare a corrected minute order reflecting the imposition of court facility fees of $210, and to forward a certified copy of the corrected order to the Glenn County Probation Department.  The judgment is affirmed.


                                        BUTZ               , J.


We concur:


               NICHOLSON       , Acting P. J.


               ROBIE              , J.