Filed 12/2/13  P. v. Mezzles CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WAYNE MEZZLES,<br><br>    Defendant and Appellant. | 2d Crim. No. B240078<br>(Super. Ct. No. 1359458)<br>(Santa Barbara County) |

Wayne Mezzles appeals from the judgment following his conviction by jury of inflicting corporal injury upon a spouse (Pen. Code, § 273.5, subd. (a));[1] possession of a deadly weapon (former § 12020, subd. (a)(1))[2]; four counts of criminal threats (§ 422); and two counts of assault (§ 240).  In a bifurcated proceeding, the trial court found true allegations of two prior serious felony convictions (§ 667, subd. (a)(1)), and two prior serious or violent felony convictions within the meaning of California's "Three Strikes"

---

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] Appellant possessed metal (brass) knuckles in violation of former section 12020, subdivision (a)(1).  In connection with the possession of metal knuckles, the current operative provisions are section 16920, which defines metal knuckles, and section 21810, which continues former section 12020, subdivision (a)(1) without substantive change.  (38 Cal.L.Rev.Comm. Reports (2009) p. 217.)

law.  (§§ 667, subds. (b)-( i), 1170.12, subds. (a)-(d).)  The court sentenced him to an aggregate term of 90 years to life in state prison.[3]

Appellant contends that, with respect to count 4, the evidence of his threat is not sufficient to support the verdict, "as a matter of law," and that the jury was wrongly instructed.  He also asserts that (1) prosecutorial misconduct denied him a fair trial; (2) the court abused its discretion in refusing to strike his prior serious felony convictions; and (3) the resulting 90 years to life sentence constituted cruel and unusual punishment.  We conclude that the evidence fails to establish that the alleged victim of count 4 was the recipient of any "criminal threat" as defined by section 422.  We will reverse that conviction, modify the sentence accordingly, and otherwise affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*Prosecution Evidence*

On October 30, 2010, appellant was home, drinking beer and Southern Comfort with his wife, Laura.  At about 10:30 p.m., he went out to get more Southern Comfort.  Laura's 15-year-old daughter, Amy, her boyfriend, Will, and his friend, Cory, were in Amy's room.  Laura was talking with them while appellant was out.  She was sitting next to Cory, holding up and examining one of his hands and talking about hand scars.  Suddenly they heard a loud thud or bang on the outside wall or window, and noticed appellant outside, yelling.  He barged inside, with brass knuckles on one hand, and headed

---

[3] The trial court sentenced appellant as follows:  count 3 (§ 422, Laura), a determinate term of 10 years (two § 667, subd. (a) enhancements), followed by a consecutive indeterminate sentence of 25 years to life (§ 667, subd. (e)(2)(A)); count 1 (§ 273.5, Laura), a stayed indeterminate sentence of 25 years to life (§ 654); count 4 (§ 422, Amy), determinate term of 10 years, consecutive (two § 667, subd. (a) enhancements), followed by a concurrent indeterminate sentence of 25 years to life; count 5 (§ 422, Amy), a determinate term of 10 years, consecutive (two § 667, subd. (a), enhancements), followed by a concurrent indeterminate sentence of 25 years to life; count 6 (§ 422, Amy), a determinate term of 10 years, consecutive (two § 667, subd. (a) enhancements), followed by a concurrent indeterminate sentence of 25 years to life; count 8 (§ 12020, subd. (a)(1)), a consecutive indeterminate sentence of 25 years to life; counts 2 and 9 (§ 240), 180 days each, concurrent.

2

toward Amy's room. Appellant "raise[d] his hand in a violent gesture . . . toward" Cory, who fled.

Appellant entered Amy's room, grabbed Laura's hair, and said something like, "You lying bitch, whore." He slammed Laura's head into Amy's dresser, breaking her eyeglasses and giving her a black eye.

Amy jumped between Laura and appellant, and told him to get away from her mom. He threw Amy to the floor, and then pulled Laura through the hallway, to the master bedroom. Amy followed them. After hearing appellant yell, "I'm going to kill you," Will called the police. Appellant left Laura's room and went to Amy's room briefly, where he tried to tackle Will. Will brushed him off.

When appellant left Laura's room, Amy called the police. He returned to Laura's room and said, "Now that I'm going to jail for good, I'm going to kill you guys." He also yelled, "You fucking bitches, I'm going to kill you."

The police arrived and arrested appellant. Before the police took him away, he looked at Amy and said, "I'll kill you." Amy was scared.

*Defense Evidence*

Appellant's mother, Karen Brennan, testified regarding appellant's childhood, his alcoholic father, and his alcoholic stepfather. The defense also called Dr. Robert Owen, a clinical psychologist, as an expert witness. Dr. Owen diagnosed appellant with post-traumatic stress disorder (PTSD) and alcoholic dependence disorder. He testified that PTSD impairs a person's ability to process information and weigh consequences.

DISCUSSION

*Amy is Not a Victim of the Count 4 Threat*

Appellant argues his count 4 criminal threat conviction must be reversed because Amy is not a victim for purposes of section 422, as a matter of law. More specifically, he argues Amy "was not the person threatened" because he did not direct the count 4 threat at her. (*Id.*, subd. (a).) We agree.

Section 422, subdivision (a) provides in relevant part as follows: "Any person who willfully threatens to commit a crime which will result in death or great bodily

3

injury to another person, with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

In response to the jury's request for clarification, the trial court advised the jury that count 4 was based on "the statement made by [appellant] to Laura Mezzles, heard by Amy [S.] prior to the police being called, I'm going to kill you." The prosecution drafted that response, which tracked its theory that Amy heard appellant threaten to kill Laura, her mother, which frightened Amy.

Appellant asserts that section 422 "applies only to a threat that is communicated to a particular person and causes that same person to be in fear for herself, or for members of her family, or both." Continuing in that vein, he asserts that because his "I'm going to kill you," threat was not made "to Amy," she cannot be "the 'person threatened'" under section 422. We agree.

"A [section 422] criminal threat . . . is a specific and narrow class of communication." (*In re Ryan* (2002) 100 Cal.App.4th 854, 863.) "When interpreting a statute, 'we turn first to the language of the statute, giving the words their ordinary meaning.' [Citation.]" (*People v. Rubalcava* (2000) 23 Cal.4th 322, 328.) "'If the language is clear and unambiguous there is no need for construction . . . .'" *People v. Talibdeen* (2002) 27 Cal.4th 1151, 1154.) Under section 422, the victim of a criminal threat is "the person threatened," the person to whom the perpetrator directs, or communicates his threat. (§ 422, subd. (a); *People v. Wilson* (2010) 186 Cal.App.4th 789, 806 ["[T]he defendant must intend for the victim to receive and understand the threat."]) Amy was not "the person threatened" in count 4.

4

*Substantial Evidence*

Appellant argues that there is not sufficient evidence to support the count 4 threat. We agree.

In reviewing the sufficiency of the evidence, we review the entire record in the light most favorable to the prosecution "to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Silva* (2001) 25 Cal.4th 345, 368.) We do not resolve credibility issues or evidentiary conflicts, and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. (*People v. Boyer* (2006) 38 Cal.4th 412, 480.) A reversal is unwarranted unless there is no substantial evidence to support the finding under any hypothesis whatever. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

Using CALCRIM No. 1300, the trial court instructed the jury as follows regarding the criminal threat counts which named Amy as the victim: "The defendant is charged in Counts 4, 5, and 6 with having made a criminal threat in violation of Penal Code section 422. [¶] To prove that the defendant is guilty of this crime, the People must prove that: [¶] 1. The defendant willfully threatened to unlawfully kill or unlawfully cause great bodily injury to Amy [S.]; [¶] 2. The defendant made the threat orally; [¶] 3. The defendant intended that his statement be understood as a threat; [¶] 4. The threat was so clear, immediate, unconditional, and specific that it communicated to Amy [S.] a serious intention and the immediate prospect that the threat would be carried out; [¶] 5. The threat actually caused Amy [S.] to be in sustained fear for her own safety; [¶] AND 6. Amy [S.]'s fear was reasonable under the circumstances." (CALCRIM No. 1300.) That instruction reflects the elements of a section 422 criminal threat, including the requirement that the perpetrator directed the threat at the victim.

The prosecution's theory was that the count 4 threat was directed at Laura before the police were called, but overheard by Amy, the named victim. While these facts, for which there was ample evidence, would support a conviction if Laura were the named victim, they do not support a like conviction for the count 4 threat naming Amy as the

victim.  The crime contemplates a victim, "the person threatened" and words that cause "*that* person reasonably to be in sustained fear for . . . her own safety or for . . . her immediate family's safety . . . ."  (§ 422 subds. (a), italics added.)  The theory of the prosecution would define the victim as either the person threatened or a member of their immediate family who overheard the threat.  That theory is contrary to the plain language of section 422.  (*People v. Rubalcava, supra,* 23 Cal.4th at p. 328; *People v. Talibdeen, supra,* 27 Cal.4th at pp. 1154-1155.)  Substantial evidence does not establish that Amy was the victim of the count 4 threat.[4]

### *Prosecutorial Misconduct*

Appellant contends that the prosecutor committed misconduct by seeking to elicit inadmissible opinion testimony from appellant's psychiatric expert, Dr. Robert Owen.  The trial court ruled that the expert could testify about PTSD, but not about appellant's capacity to form the requisite specific intent for criminal threats or whether he had that intent at the time of the crimes.  The prosecutor nonetheless repeatedly asked questions regarding intent.  Some examples follow:  "By Mr. Verburgt:  Q:  Would it be fair to say that the defendant's emotional functioning may be of interest, but it's largely irrelevant in a case in determining guilt?"  "Q:  What's the intent required for a violation of Penal Code section 273.5?"  "Q:  Do you know what the mental state required, "yes" or "no," for violation of Penal Code section 422, criminal threats?"  The court sustained objections to the just quoted questions.  Thereafter, at the bench, the court reminded Mr. Verburgt of its ruling limiting Dr. Owen's testimony regarding "the defendant's specific state of mind."  Mr. Verburgt persisted in asking improper questions.  The court excused the jury, conferred with counsel, and restated its ruling regarding the limits on Dr. Owen's testimony.  Mr. Verburgt again returned to the topic of appellant's state of mind, asking, "So you have no way of knowing what the defendant's state of mind was on that date, do you?"  The court interrupted and admonished him, "It's an improper question."  Mr. Verburgt soon asked another improper question, leading the court to admonish him, yet

---

[4] Our resolution of this issue obviates the need to address appellant's instructional error claim.

6

again as follows: "No. We've made this clear. I've told you several times, do not go into that area." Next question."

The standards of review of prosecutorial misconduct are well settled. (*People v. Williams* (2013) 56 Cal.4th 630, 671.) A prosecutor who uses deceptive or reprehensible methods to persuade commits misconduct. (*Ibid*.) If the prosecutor's actions infect the trial with such unfairness as to deny due process, the federal Constitution demands reversal. (*Ibid.*) Under California law, a prosecutor who uses such methods commits misconduct even if his actions do not result in a fundamentally unfair trial. (*Ibid*.)

To preserve a claim of misconduct, a defendant must make a timely objection and request an admonition. (*People v. Williams, supra*, 56 Cal.4th at p. 671.) Defendant's claim is preserved, however, if an admonition would not have cured the harm. (*Ibid*.) When a misconduct claim challenges comments made by the prosecutor, the pertinent inquiry is whether there is a reasonable likelihood the jury construed or applied the remarks in an objectionable manner. (*Ibid*.)

Defense counsel moved for a mistrial based upon prosecutorial misconduct after Dr. Owen completed his testimony. Counsel argued the prosecutor's repeated violations of the ruling limiting Dr. Owen's testimony were prejudicial because they suggested the defense was hiding the truth from the jury. The trial court concluded the improper questions hurt the prosecutor and any detriment to the defense was cured by the court's admonishment to the prosecutor. Defense counsel submitted the matter without requesting any further admonition, and the court denied the motion.

Appellant has forfeited his claim by failing to request another admonition. (*People v. Williams, supra*, 56 Cal.4th at p. 671.) Moreover, he has not shown that an admonition would not have cured the harm. (*Ibid.*) Forfeiture aside, the cited misconduct was harmless under any standard of review. The trial court instructed the jury that "[n]othing the attorneys say is evidence" and the jury must "decide what the facts are in this case," using "only the evidence that was presented in this courtroom." (CALCRIM No. 222.) It further instructed the jury that attorneys' "questions are not evidence," and it

7

should "not assume that something is true just because one of the attorneys asked a question that suggested it was true." (*Ibid.*) It is presumed that the jury understood and followed the instructions. (*People v. Mooc* (2001) 26 Cal.4th 1216, 1234.) There is no reasonable likelihood that the jury construed or applied the challenged questions in an improper or erroneous manner. (*People v. Samayoa* (1997) 15 Cal.4th 795, 843-844; *People v. Frye* (1998) 18 Cal.4th 894, 970, overruled on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) That said, we join with the trial court in concluding that Mr. Verburgt engaged in improper questioning in light of the court's repeated admonitions. It appears from this record that Mr. Verburgt engaged in deliberate misconduct dedicated to the evasion, or outright defiance, of the court's ruling and admonitions.

### *Romero*

Appellant contends that the trial court abused its discretion by denying his motion to strike one or both of his prior convictions for purposes of three strikes sentencing, pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 504, or reduce them to misdemeanors. We disagree.

Defense counsel argued that the victims' injuries were minimal; appellant was under the influence of alcohol at the time of the offense; his stepfather sexually abused him for many years, which caused appellant to suffer from a mental disorder (PTSD); and he had taken steps to rehabilitate himself. The prosecution stressed appellant's long criminal history, which included convictions for violent offenses and violations of parole and probation, the absence of mitigating factors, and the numerous aggravating factors in his case. The court declined to strike either of the prior "strike" convictions.

A trial court has the discretion to strike a prior conviction for purposes of sentencing if the defendant falls outside the spirit of the three strikes law. (§ 1385; *People v. Superior Court* (*Romero*), *supra*, 13 Cal.4th at pp. 529-530.) In deciding whether to exercise its discretion, the court "must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant

may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

The refusal to strike a prior conviction is likely to be considered an abuse of discretion only in extraordinary cases where the trial court was unaware of its discretion, or considered impermissible factors. (*People v. Carmony* (2004) 33 Cal.4th 367, 378.) In the absence of such a showing, trial court is presumed to have acted to achieve the legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review. (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978.)

There was no abuse of discretion. Appellant's prior strikes were a 1999 robbery of a homeless man (§ 211) and a 2007 criminal threat (§ 422) he made against a woman who ended their dating relationship. His prior convictions include other violent crimes, such as a misdemeanor corporal injury upon a spouse/or former spouse (§ 273.5, subd. (a)) and battery (§ 242). As the trial court observed, the courts and the prosecution repeatedly gave him opportunities on probation, in treatment programs, instead of sentencing him to prison, but that "didn't work." The court also had "to balance the safety of the community," and appellant's "danger to the community." The court reasonably determined that appellant "is the kind of person that is within the scope of the Three Strikes Law" and denied his *Romero* motion.

*Cruel and Unusual Punishment*

We reject appellant's contention that his sentence is grossly disproportionate to his offense and constitutes cruel and unusual punishment under the Eighth Amendment of the United States Constitution. In *Rummel v. Estelle* (1980) 445 U.S. 263, 274, the United States Supreme Court upheld a mandatory life sentence under a Texas recidivist statute even though the defendant had been convicted of obtaining $120.75 by false pretenses and his prior convictions consisted of two nonviolent felonies. The Court reasoned that the sentence under a recidivist statute is "based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time

9

during which he has been convicted of and sentenced for other crimes."  (*Id.* at p. 284.) The statute serves the legitimate goal of deterring repeat offenders and of segregating the recidivist "from the rest of society for an extended period of time."  (*Ibid*.)  Since appellant's strikes include violent offenses, the justification for a lengthy sentence here is more compelling than in *Rummel*.

We also reject appellant's contention that his sentence violates the state constitutional prohibition against cruel or unusual punishment.  (Cal.Const., art. 1, § 17.) A punishment violates the state constitution if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity."  (*In re Lynch* (1972) 8 Cal.3d 410, 424, fn. omitted.)  Appellant's sentence was warranted because of his recidivism, the violent nature of his prior offenses, and the circumstances of the present offense.  (See *People v. Martinez* (1999) 71 Cal.App.4th 1502.)

## DISPOSITION

Appellant's conviction on count 4 is reversed and dismissed, and the sentence attributable to that count is stricken.  The clerk shall prepare an amended abstract of judgment and forward a copy to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:



GILBERT, P.J.



YEGAN, J.


10

Edward H. Bullard , Judge

Superior Court County of Santa Barbara

_____

Linda C. Rush, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Daniel C. Chang, Deputy Attorney General, for Plaintiff and Respondent.