Filed 4/29/14  P. v. Moore CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C073468 |
| Plaintiff and Respondent, | (Super. Ct. No. SF121602A) |
| v. | |
| FRANKIE GARRETT MOORE, SR., | |
| Defendant and Appellant. | |

Defendant Frankie Garrett Moore lived in an apartment complex managed by Gloria Dellavedova.  For approximately five months, Dellavedova attempted to evict defendant because he did not pay rent.  During the course of the eviction process, defendant frequently caused trouble in the apartment complex and threatened Dellavedova on many occasions.  A week after a court granted an eviction order, Dellavedova and defendant had a confrontation that ended with defendant hitting Dellavedova on the head with a "4-by-4" wooden stick and telling her to "[w]atch [her]self outside the gate 'cause somebody gonna stick [her]."  A jury found defendant guilty of assault with a deadly weapon and criminal threats.  On appeal, defendant argues there is insufficient evidence to support the criminal threats conviction.  We agree but modify the conviction to attempted criminal threats and remand for resentencing.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant moved into an apartment complex managed by Dellavedova in April 2012. From April until September defendant never paid rent. During that time, Dellavedova attempted to evict defendant from the apartment complex and finally received a court order evicting defendant in early September. Over the course of the five-month eviction process, defendant and Dellavedova, who also resides at the complex, commonly had verbal altercations where defendant threatened her. Dellavedova admittedly did not "feel threatened" by defendant's threats during the five-month time frame and characterized the threats as defendant "talking crap" and making "wolf calls," referring to "The Boy Who Cried Wolf."

Approximately one week after receiving the eviction order from the court, Dellavedova took her dogs outside of her apartment so they could "go to the bathroom." The unleashed dogs ran down the stairs, over to defendant's son, and began to bark at him. After Dellavedova came downstairs and retrieved her dogs, defendant emerged from his apartment holding a butcher knife. Defendant approached Dellavedova and said, "I'm gonna stab those dogs." Taking this threat as "[j]ust another wolf call," Dellavedova told defendant, "put that knife away, you know you're not gonna stab anyone." Upon hearing Dellavedova, defendant returned to his apartment and put the knife away. Within seconds defendant returned from his apartment and began to engage in a verbal altercation with Dellavedova, calling her a "[s]tupid white bitch," to which she retorted he was a "[s]tupid black negro." At some point in the verbal altercation, defendant spit in Dellavedova's face and she spit back in his face. Dellavedova then turned to walk back up the stairs to her apartment.

After Dellavedova took a few steps up the stairs, defendant hit her on the back of the head with a "4-by-4" wooden stick, which caused bleeding and a one-inch laceration. Dellavedova then turned to defendant and said, "Really, Frank? It didn't have to go to

2

this," and indicated that "he was gonna go to jail for this one." In response, defendant told her to "[w]atch [her]self outside the gate 'cause somebody gonna stick[1] [her]."

Defendant was charged with assault with a deadly weapon and criminal threats. At trial, Dellavedova initially testified that she considered defendant's threats after he hit her a "wolf call." After the prosecutor reminded her of her previous testimony at the preliminary examination, Dellavedova testified that she took the threat "serious[ly]." The jury found defendant guilty of both assault with a deadly weapon and criminal threats. The trial court sentenced defendant to four years eight months in prison.

DISCUSSION

Defendant argues there is insufficient evidence of two elements of the criminal threats conviction. First, he asserts there is insufficient evidence to find the final threat he made to Dellavedova was "unconditional, unequivocal and immediate." We disagree. Additionally, defendant claims substantial evidence does not support a finding that his threat put Dellavedova in sustained fear. We agree and modify the judgment.

Penal Code[2] section 422, subdivision (a), provides that a person is guilty of making a criminal threat if he "willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety."

---

**1** Dellavedova interpreted this statement to mean that if she "left [her] gate, outside where [she] live[d], that somebody" would stab her.

**2** All further section references are to the Penal Code.

3

We " 'view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Johnson* (1980) 26 Cal.3d 557, 576.) " '[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction . . . [is] to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.' " (*Ibid.*) " '[T]his inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." [Citation.] Instead the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (*Ibid.*)

I

*Substantial Evidence Supports A Finding Defendant's*

*Threat Was Unconditional, Unequivocal, Immediate, And Specific*

" 'To constitute a criminal threat, a communication need not be *absolutely* unequivocal, unconditional, immediate, and specific. The statute includes the qualifier "so" unequivocal, etc., which establishes that the test is whether, in light of the surrounding circumstances, the communication was *sufficiently* unequivocal, unconditional, immediate, and specific as to convey to the victim a gravity of purpose and immediate prospect of execution.' . . . '[I]t is the circumstances under which the threat is made that give meaning to the actual words used. Even an ambiguous statement may be a basis for a violation of section 422.' " (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1433.) "The jury is 'free to interpret the words spoken from all of the surrounding circumstances of the case.' " (*Ibid.*) " 'Conditional threats are true threats if their context reasonably conveys to the victim that they are intended.' " (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1540.) "[T]he statute 'was not enacted to punish emotional outbursts, it targets only those who try to instill fear in others.' " (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 861.)

4

Substantial evidence supports a finding that defendant's threat was sufficiently unequivocal, unconditional, immediate, and specific. Although defendant did not explicitly state where or who would "stick" Dellavedova, the context of the threat reasonably conveyed his intent. Under these circumstances, it is reasonable to conclude that defendant would stab Dellavedova because of his ongoing hostility with her, the inevitability of Dellavedova leaving the apartment complex, and most importantly, the fact that defendant assaulted Dellavedova prior to making the threat. Unlike his previous threats, defendant actually assaulted Dellavedova before making this threat. It is reasonable to conclude that his words here, unlike the previous threats, sufficiently conveyed to Dellavedova an immediate and specific intent to harm her. The jury could have reasonably inferred that this threat was sufficiently unequivocal because after initially testifying the threat was a "wolf call," Dellavedova clarified that "[a]fter he hit me" she took the threat seriously. Defendant's assertion that the threat was merely an "angry utterance," that was "one more empty threat in an ongoing stream of angry words," is without merit. Substantial evidence supports a finding that defendant's threat *after* he committed the assault on Dellavedova conveyed a sufficient gravity of purpose that defendant would immediately harm Dellavedova, which was absent in his previous threats.

II

*There Was Insufficient Evidence To Find Dellavedova Was In Sustained Fear*

"Section 422 requires the person threatened 'reasonably to be in sustained fear for his or her own safety[,]'. . . [ which] requires proof of a mental element in the victim." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.) "A victim must actually be in sustained fear," to establish this element. (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1140.) Sustained fear means "a period of time 'that extends beyond what is momentary, fleeting, or transitory.' " (*Ibid.*) "The victim's knowledge of defendant's prior conduct is

5

relevant in establishing that the victim was in a state of sustained fear." (*Allen*, at p. 1156.)

Here, neither Dellavedova's words nor her conduct provided substantial evidence that defendant's threat placed her in sustained fear. The People agree that Dellavedova did not testify at trial "that she was 'afraid' of [defendant,] to the extent that she didn't use the word 'fear.' " Indeed, at trial Dellavedova initially testified that she considered defendant's threat a "wolf call," and that "[defendant] wasn't gonna do anything." Only after the prosecutor attempted to rehabilitate her testimony did she state that "after he hit me, of course I take [*sic*] [the threat] serious[ly]." Nothing in her testimony, however, addressed the issue of whether she *actually* was in sustained fear.

In *In re Sylvester C.* (2006) 137 Cal.App.4th 601, 604-605, the defendant made a threat to the victim that a witness heard. Although the witness testified that "everybody got scared," the appellate court ruled that this testimony did not constitute substantial evidence that *the victim* (who did not testify) experienced fear. (*Id*. at p. 606.) The court in *Sylvester C.* noted that " '[e]vidence which merely raises a strong suspicion of the defendant's guilt is not sufficient to support a conviction. Suspicion is not evidence, it merely raises a possibility, and this is not a sufficient basis for an inference of fact.' " (*Id*. at pp. 606-607.)

Similarly here, Dellavedova never testified that she was actually in sustained fear or afraid at all and the record is silent as to her state of mind after defendant threatened her. While the context of the threat defendant made might have placed a reasonable person in sustained fear, Dellavedova never indicated she was *actually* afraid. Dellavedova's testimony that she took the threat seriously is not sufficient.

In addition to her testimony, Dellavedova did not demonstrate any conduct that showed she was in sustained fear. Dellavedova's history of receiving defendant's numerous "wolf calls" is relevant because Dellavedova did not act differently here compared to the previous threats. In fact, the officer who saw Dellavedova after the

6

incident testified only that she appeared "angry" and "very agitated." When Dellavedova heard that defendant had returned to the apartment complex, she did not hide or lock herself in her apartment; rather, she immediately came out of her apartment and saw defendant. None of these facts provides substantial evidence of Dellavedova's subjective state of mind and none of them demonstrates she was in sustained fear. They only raise a suspicion of fear, at best, and therefore are not a sufficient basis to support a finding of sustained fear beyond a reasonable doubt.

### III

*Defendant's Words Constitute Attempted Criminal Threats*

"Although we find the evidence insufficient to prove [defendant] guilty of the crime of criminal threat, it was sufficient to prove him guilty of attempted criminal threat. All elements of the crime of criminal threat were established, except whether the victim . . . actually experienced sustained fear upon hearing the threat." (*In re Sylvester C.*, *supra*, 137 Cal.App.4th at p. 607.) But the absence of proof of that element does not defeat a conviction for attempted criminal threats. Because defendant satisfied each element of section 422 except causing Dellavedova to be in sustained fear, substantial evidence supports a conviction of the lesser included offense of attempted criminal threats.

### DISPOSITION

Defendant's conviction of criminal threats is modified to a conviction of attempted criminal threats, and the case is remanded to the trial court for resentencing.

　　　　　　　　　　　　　　　　　　　　　　ROBIE　　　　　　, J.

We concur:

　　　NICHOLSON　　　, Acting P. J.

　　　DUARTE　　　　, J.

7