[No. C035092. Third Dist., July 30, 2002.]

In re RYAN D., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
RYAN D., Defendant and Appellant.

## COUNSEL

James William Webster, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, John G. McLean and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**SCOTLAND, P. J.**—Angry that an officer had cited him for possessing marijuana, Ryan D. (the minor) painted a picture of the officer and turned it in as a high school art class project a month later. The painting depicted the minor shooting the officer in the back of the head, blowing away pieces of her flesh and face. Finding it "scary," the instructor took it to the assistant principal's office. When the painting was shown to the officer, she became concerned about her safety.

The juvenile court found the minor made a criminal threat in violation of Penal Code section 422,[1] and the minor admitted possessing more than 28.5 grams of marijuana (Health & Saf. Code, § 11357, subd. (b)). He was made a ward of the court and placed on home probation.

On appeal, the minor contends the painting did not constitute a criminal threat. We agree for reasons that follow.

"Painters and poets . . . have always had an equal license in bold invention." (Horace, Epistles, book III.) As an expression of an idea or intention, a painting—even a graphically violent painting—is necessarily ambiguous because it may use symbolism, exaggeration, and make-believe. The ambiguity may be resolved by the circumstances surrounding its presentation. However, to be punishable as a criminal threat, a painting that constitutes a "writing" within the meaning of the statutory scheme must fall into a narrow class of expression, i.e., it must constitute a threat to commit a crime that will result in death or great bodily injury; it must be made with the specific intent that it be taken as a threat; it must be so unequivocal, unconditional, immediate, and specific as to convey to the person threatened such a gravity of purpose and an immediate prospect of execution of the threat that it would cause a reasonable person to be in sustained fear for his or her safety or the safety of the person's immediate family; and it must cause the victim to experience such fear.

As we shall explain, although the minor's painting was intemperate and demonstrated extremely poor judgment, the evidence fails to establish that

---

[1]Further section references are to the Penal Code unless otherwise specified.

the minor intended to convey a threat to the officer. Moreover, under the circumstances in which it was presented, the painting did not convey a gravity of purpose and immediate prospect of the execution of a threat to commit a crime that would result in death or great bodily injury to the officer. Accordingly, we will reverse the order sustaining the charge of making a criminal threat.

## FACTS

Lori MacPhail, a peace officer assigned to a high school, was driving to the school when she saw the minor with some other students off-campus during school hours. After questioning them about their truancy, she conducted a patdown in preparation for driving them back to the school. Upon discovering that the minor was possessing marijuana, MacPhail issued him a citation.

About a month after this incident, the minor turned in an art project for a painting class he was taking at the high school. As a general rule, art projects were displayed in the classroom for up to two weeks and critiqued by the class. The students were told they could not paint "[t]hings that relate to drug imagery, gang imagery, [and] explicit sexual or violent imagery," and that such work would receive no credit and would be taken to the front office.

The minor's painting depicted a person wearing a green hooded sweatshirt and discharging a handgun at the back of the head of a female peace officer wearing a uniform bearing badge No. 67. The officer had blood on her hair, and pieces of her flesh and face were being blown away. The hooded person appeared to be the minor.

When the art teacher saw the painting, she found it to be "disturbing" and "scary," and took it to a school administrator. Concerned that the officer depicted in the painting was Officer MacPhail, who wore badge No. 67, an administrator told MacPhail that a student had created a painting of a "very serious . . . nature" involving a female officer wearing that badge number.

The following day, an assistant principal confronted the minor about the painting. After initially saying that it was "a general picture depicting his anger at police officers," the minor finally admitted that he was the person wearing the green hooded sweatshirt and that the victim was Officer MacPhail. He said he was angry with MacPhail because she had cited him for possessing marijuana. Asked "if it was reasonable to expect that Officer MacPhail would eventually see the picture," the minor agreed.

When Officer MacPhail saw the painting later that day, she "was pretty shocked" and "upset" because it depicted somebody "blowing [her] head off." It made her feel "very uncomfortable"; in her words, the painting suggested the minor was "so angry he wants to take that anger out on me in the form of shooting me and it doesn't—I mean, I don't know how else to express that but that it was, I'm supposed to be feeling afraid of that or whatever." MacPhail was concerned that "it would not be impossible [for the minor] to create a situation where [MacPhail] would be isolated from any sort of backup or support and such an event could be carried out." As a "normal precaution," MacPhail stayed away from the school for a few days.

While being questioned by a police officer who was assigned to investigate the matter, the minor once again admitted that he was the person depicted as the shooter and that Officer MacPhail was the victim. The minor reiterated that he painted the scene to express his anger at MacPhail for citing him for possessing marijuana.

At the juvenile court's jurisdictional hearing, the 15-year-old minor testified that the painting simply was an expression of his feelings, "letting [his] anger out" for having gotten into trouble. According to the minor, he did not expect the painting to be shown to Officer MacPhail, and he did not intend that it should scare her. He turned it in expecting a grade or credit and did not think that he would get in trouble.

## DISCUSSION

■ When the sufficiency of the evidence is challenged on appeal, we apply the familiar substantial evidence rule. We review the whole record in a light most favorable to the judgment to determine whether it contains substantial evidence, i.e., evidence that is credible and of solid value, from which a rational trier of fact could find beyond a reasonable doubt that the accused committed the offense. (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]; *In re Frederick G.* (1979) 96 Cal.App.3d 353, 362-365 [157 Cal.Rptr. 769].)

As with all challenges to the sufficiency of the evidence, we must begin with a legal question, the minimum factual showing to establish the offense. ■ To prove a violation of section 422, the prosecution had to establish that (1) the minor " 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person' "; (2) the minor made the threat " 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out' "; (3) the threat (which may be " 'made verbally, in writing, or by means of an

electronic communication device' ") was " 'on its face and under the circumstances in which it [was] made . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat' "; (4) the threat actually caused the person threatened " 'to be in sustained fear for his or her own safety or for his or her immediate family's safety' "; and (5) the threatened person's fear was " 'reasonabl[e]' " under the circumstances. (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228 [109 Cal.Rptr.2d 315, 26 P.3d 1051], quoting § 422; *People v. Melhado* (1998) 60 Cal.App.4th 1529, 1536 [70 Cal.Rptr.2d 878]; see also CALJIC No. 9.94 (2002 rev.) (6th ed. 1996).)[2]

■ A judicial gloss has been placed upon the statutory elements of this offense. As we have noted, section 422 requires that the communication must be sufficient "on its face and under the circumstances in which it is made" to constitute a criminal threat. This means that the communication and the surrounding circumstances are to be considered together. "Thus, it is the circumstances under which the threat is made that give meaning to the actual words used. Even an ambiguous statement may be a basis for a violation of section 422." (*People v. Butler* (2000) 85 Cal.App.4th 745, 753 [102 Cal.Rptr.2d 269]; see also *People v. Jones* (1998) 67 Cal.App.4th 724, 727-728 [79 Cal.Rptr.2d 258].)

The circumstances surrounding a communication include such things as the prior relationship of the parties and the manner in which the communication was made. (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1137-1138 [105 Cal.Rptr.2d 165].) Although an intent to carry out a threat is not required, the actions of the accused after making the communication may serve to give meaning to it. (*People v. Martinez* (1997) 53 Cal.App.4th 1212, 1220-1221 [62 Cal.Rptr.2d 303].) And, just as affirmative conduct and circumstances can show that a criminal threat was made, the absence of circumstances that would be expected to accompany a threat may serve to dispel the claim that a communication was a criminal threat. (*In re Ricky T., supra*, 87 Cal.App.4th at p. 1139.)

---

[2]Section 422 states: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison. . . ."

To constitute a criminal threat, a communication need not be *absolutely* unequivocal, unconditional, immediate, and specific. The statute includes the qualifier "so" unequivocal, etc., which establishes that the test is whether, in light of the surrounding circumstances, the communication was *sufficiently* unequivocal, unconditional, immediate, and specific as to convey to the victim a gravity of purpose and immediate prospect of execution. (*People v. Bolin* (1998) 18 Cal.4th 297, 340 [75 Cal.Rptr.2d 412, 956 P.2d 374].)

Section 422 does not require that a threat be personally communicated to the victim by the person who makes the threat. (*In re David L.* (1991) 234 Cal.App.3d 1655, 1659 [286 Cal.Rptr. 398].) Nevertheless, we emphasize that the statute "was not enacted to punish emotional outbursts, it targets only those who try to instill fear in others." (*People v. Felix* (2001) 92 Cal.App.4th 905, 913 [112 Cal.Rptr.2d 311].) In other words, section 422 does not punish such things as "mere angry utterances or ranting soliloquies, however violent." (*People v. Teal* (1998) 61 Cal.App.4th 277, 281 [71 Cal.Rptr.2d 644].) Accordingly, where the accused did not personally communicate a threat to the victim, it must be shown that he specifically intended that the threat be conveyed to the victim. (*People v. Felix, supra,* 92 Cal.App.4th at p. 913; *In re David L., supra,* 234 Cal.App.3d at p. 1659.)

 In applying these established legal standards to the evidence in this case, two factors must be kept in mind.

First, section 422 cannot be applied to constitutionally protected speech. (See *People v. Quiroga* (1993) 16 Cal.App.4th 961, 968-969 [20 Cal.Rptr.2d 446].) In fact, a prior legislative effort to punish criminal threats (former §§ 422, 422.5; Stats. 1977, ch. 1146, § 1, pp. 3684-3685) was declared unconstitutional. (*People v. Mirmirani* (1981) 30 Cal.3d 375 [178 Cal.Rptr. 792, 636 P.2d 1130].) Recognizing that the Constitution does not necessarily preclude the Legislature from punishing threats, our Supreme Court held that "statutes which attempt to do so must be narrowly directed only to threats which truly pose a danger to society." (*Id.* at p. 388, fn. 10.) The court added that "a threat can be penalized only if 'on its face and in the circumstances in which it is made [it] is so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution . . . .' " (*Ibid.,* quoting from *United States v. Kelner* (2d Cir. 1976) 534 F.2d 1020, 1027.)

In enacting the current version of section 422, the Legislature adopted the standard set forth in *United States v. Kelner, supra,* 534 F.2d 1020, and suggested by California's Supreme Court in *People v. Mirmirani, supra,* 30 Cal.3d 375. Hence, the standard set forth in section 422 is both the statutory

definition of a crime and the constitutional standard for distinguishing between punishable threats and protected speech. Accordingly, in applying section 422, courts must be cautious to ensure that the statutory standard is not expanded beyond that which is constitutionally permissible. (See *People v. Quiroga, supra,* 16 Cal.App.4th at pp. 968-969.)

Second, the statutory definition of the crime proscribed by section 422 is not subject to a simple checklist approach to determining the sufficiency of the evidence. Rather, it is necessary first to determine the facts and then balance the facts against each other to determine whether, viewed in their totality, the circumstances are sufficient to meet the requirement that the communication "convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat." This presents a mixed question of fact and law. In considering the issue, we will defer to the trial court's resolution of the historical facts by viewing the evidence in a light most favorable to the judgment. In determining whether the facts thus established are minimally sufficient to meet the statutory standard, we must exercise our independent judgment. (See *People v. Nesler* (1997) 16 Cal.4th 561, 582 [66 Cal.Rptr.2d 454, 941 P.2d 87]; *People v. Louis* (1986) 42 Cal.3d 969, 984-988 [232 Cal.Rptr. 110, 728 P.2d 180].)

 We shall conclude that the evidence fails to establish the minor intended to convey a threat to Officer MacPhail and that, under the circumstances in which it was presented, the painting did not convey a gravity of purpose and immediate prospect of the execution of a crime that would result in death or great bodily injury to MacPhail. Consequently, we need not address the minor's arguments that the evidence is insufficient to establish other elements of section 422.

A criminal threat must be conveyed "verbally, in writing, or by means of an electronic communication device." (§ 422.) The word "writing" is sufficiently broad to include any physical rendering of a person's thoughts, ideas, or creations. (*Goldstein v. California* (1973) 412 U.S. 546, 561 [93 S.Ct. 2303, 2312 [37 L.Ed.2d 163, 176-177].) Indeed, communication through pictorial renderings predates civilization itself. (*Yorty v. Chandler* (1970) 13 Cal.App.3d 467, 471 [91 Cal.Rptr. 709].)

 In this case, however, we need not determine whether a painting alone can constitute a "writing" within the meaning of section 422. The minor's painting included the letters "CPD," for Chico Police Department, and the badge number "67," for Officer MacPhail, which were integral to the painting and constituted the specific means used by the minor to identify the subject of the painting as MacPhail. Therefore, even if we were to conclude

that the word "writing" in section 422 requires the depiction of letters or numbers, the minor's painting would satisfy this criterion. (See *People v. Franz* (2001) 88 Cal.App.4th 1426, 1446 [106 Cal.Rptr.2d 773] ["shush" or "sh" sufficient to constitute a verbal criminal threat when accompanied by a threatening motion].)

It has been said that a picture is worth a thousand words. But as the expression of an idea, a painting may make "extensive use of symbolism, caricature, exaggeration, extravagance, fancy, and make-believe." (*Yorty v. Chandler, supra,* 13 Cal.App.3d at p. 472.) A criminal threat, on the other hand, is a specific and narrow class of communication. (*People v. Mirmirani, supra,* 30 Cal.3d at p. 388, fn. 10.) It is the expression of an intent to inflict serious evil upon another person. (See *People v. Toledo, supra,* 26 Cal.4th at p. 233.)

As an expression of intent, a painting—even a graphically violent painting—is necessarily ambiguous. Therefore, standing alone, the minor's painting did not constitute a criminal threat. Of course, ambiguity may be resolved by surrounding circumstances. However, the circumstances in this case do not support a finding that the minor's painting meets the requirements of section 422.

After completing the painting, the minor took it to class and turned it in for credit. This would be a rather unconventional and odd means of communicating a threat. Ordinarily, a person wishing to threaten another would not do so by communicating with someone in a position of authority over the person making the threat. This is not invariably so, but usually threats that are made to, or in the presence of, an authority figure are made when the threatener is in a rage, is under the influence of alcohol or drugs, or is attempting to serve an immediate purpose, such as dissuading a witness. (See *People v. Franz, supra,* 88 Cal.App.4th at pp. 1442, 1446-1447; *People v. Lepolo* (1997) 55 Cal.App.4th 85, 88-89 [63 Cal.Rptr.2d 735].) The incident that sparked the minor's anger occurred over a month before he turned in the painting. While it is apparent that he remained angry, nothing suggests he remained in a rage for the entire month.

Even though the juvenile court found that the minor "intended to take [the painting] to school for a grade," the court noted he "could" have had another purpose. But the mere possibility that the minor had a dual intent in creating the painting and taking it to class is insufficient to sustain the finding that he committed a criminal offense. (*People v. Briggs* (1967) 255 Cal.App.2d 497, 500-501 [63 Cal.Rptr. 111].)

It is true the minor conceded it was reasonable to expect that Officer MacPhail eventually would see the minor's painting. However, this concession was made at the urging of an assistant principal near the end of a

40-minute interview in which the minor stated that he did not think MacPhail would ever see the painting. In light of all the evidence, the concession is insufficient to support the juvenile court's finding that the minor *intended* MacPhail to see the painting. After all, he did not display it to MacPhail or put it in a location where he knew she would see it. Nor did he communicate with MacPhail in any manner to advise her that she should see the painting. Even MacPhail acknowledged that the students would not expect her to come into the art classroom. In fact, MacPhail did not learn of the painting until an assistant principal called and then showed it to her.

As we have noted, to establish a criminal threat, it must be shown that, at the time the minor acted, he had the specific intent that Officer MacPhail would be shown the painting. (*In re David L., supra*, 234 Cal.App.3d at p. 1659.) Viewed in a light most favorable to the judgment, the totality of the circumstances establishes that the minor could have, and perhaps even should have, foreseen the possibility that MacPhail would learn of and observe the painting. But the evidence is not sufficient to establish that, at the time he acted, the minor harbored the specific intent that the painting would be displayed to MacPhail.

In any event, under the circumstances, as a perceived threat the painting was not so unequivocal, unconditional, immediate, and specific as to convey a gravity of purpose and an immediate prospect of the execution of a crime against Officer MacPhail that would result in death or great bodily injury. It was not accompanied by any words, on the painting or otherwise, such as "this will be you," "I do have a gun, you know," or "watch out." The minor did not direct any gestures or facial expressions to Officer MacPhail in association with the painting. In fact, the minor had no contact at all with MacPhail for the month that elapsed between the time she gave him the citation and the day he turned the painting in as a high school art class project.

The painting certainly reflects anger on the minor's part, but without more it does not appear to be anything other than pictorial ranting. That this is so is reflected by the fact that the actions of school authorities and the police show they did *not* perceive the painting to be an immediate threat. When the minor's art teacher saw the painting, believed the hooded figure depicted the minor, and found it "disturbing" and "scary," she did not call security or the police. She simply took it to an assistant principal's office with a note suggesting that he look at it. Indeed, she waited until the next day to speak with the minor about the painting. The teacher's failure to take any other action demonstrates that she did not view the painting as an immediate threat to any officer, let alone Officer MacPhail. Likewise, when an assistant

principal saw the painting, he did not seek to have the minor arrested. Even MacPhail did not have the minor arrested when she saw the painting and was shocked by its graphic nature. She simply asked another officer to investigate the matter. When that officer saw the painting and was "disturbed" by it, in part because there had been several shootings on high school grounds, he, too, did not immediately arrest the minor or take any other steps to secure MacPhail's safety.

The failure of school authorities, the victim, and the police to take immediate action against the minor illustrates that the painting did not convey to them such an unequivocal, unconditional, immediate, and specific threat to commit a crime that would result in death or great bodily injury, with a gravity of purpose and immediate prospect of executing such a threat.

We certainly find no fault with the school authorities and the police treating the matter seriously. The painting was a graphic, if mythical, depiction of the brutal murder of Officer MacPhail. Without question, it was intemperate and demonstrated extremely poor judgment. But the criminal law does not, and can not, implement a zero-tolerance policy concerning the expressive depiction of violence. (See *People v. Toledo, supra,* 26 Cal.4th at p. 229; *People v. Mirmirani, supra,* 30 Cal.3d at p. 388, fn. 10.)

In sum, the painting was ambiguous as the threat of an intent to commit murder. And the surrounding circumstances were not sufficient to convey a gravity of purpose and immediate prospect of execution of such a threat, or even to demonstrate that the minor intended to convey *any* threat to Officer MacPhail. Hence, the evidence did not establish that the painting constituted a criminal threat in violation of section 422.

## DISPOSITION

The juvenile court's order sustaining the charge of making a criminal threat in violation of section 422 is reversed. The finding that the minor violated Health and Safety Code section 11357, subdivision (b) is affirmed. The matter is remanded to the juvenile court with directions to vacate the disposition, dismiss the section 422 charge, and enter a new disposition on the marijuana adjudication.

Blease, J., and Sims, J., concurred.