Filed 9/9/14  P. v. Ronson CA5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GINA PAULINE RONSON,<br><br>    Defendant and Appellant. | F067316<br><br>(Super. Ct. No. MF50171)<br><br>**O P I N I O N** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Merced County.  Mark V. Bacciarini, Judge.

Gregory M. Chappel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

**\***      Before Levy, Acting P.J., Kane, J., and Chittick, J.†

†      Judge of the Fresno Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

After a bench trial, the court convicted appellant, Gina Pauline Ronson, of felony stalking (count 1/Pen. Code, § 646.9)[1] and misdemeanor making criminal threats (count 2/§ 422).

On appeal, Ronson contends: (1) the evidence is insufficient to support her conviction on either count; and (2) the court erred when it denied her motion to dismiss. We reverse.

## FACTS

On a late afternoon in 2008, Lori Norman, a custodian at the M Street post office in Merced found a two-page magazine advertisement for Kimber guns in a netting cart. The ad was folded in half and was the only item in the cart. It had pictures of Kimber guns on both pages and numerous notations on one page including the following: "My Homework Stephanie[,]" "To Jacob Struble [hand drawn heart] Boo Gina R. See my Boo Boo[,]" "I'm going to buy a Kimber for Jacob Struble[,]" "I am a Kimber owner[,]" "My Best Weapon[,]" and "Gina Ronson Holds a Kimber for Jay Struble[.]"[2] The ad was not in an envelope and it did not have a delivery address, a return address, or postage.

Norman described the cart as a flat, open cart, four to five feet long that was used to stack trays of mail and that many people put outgoing mail on. The cart was sitting in a big open area on a dock outside the post office's rear exit.

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

[2] The ad had several other illegible and legible notations including the following: "you [unintelligible] me on my (R) knee[,]" "All D.A.s should have a Kimber[,]" "I have good eyes[,]" "P.I. Victor Byrd DCA (CA) X P.I.[,]" "'Elvire' Johnson, TX[,]" "'Frank Daugherty is hot[,]'" "She pulled it? Yes she pulled the [unintelligible][,]" and "'K Rocha on tresspasser' [sic] gang members[.]"

Norman thought the ad was outgoing mail and picked it up. She recognized the name "Struble" on the ad as a friend of her son-in-law, Armando Arcejo, and gave it to Arcejo.

Merced Police Sergeant Jacob Struble testified he first came into contact with Ronson in September 2005 when he arrested her for annoying and harassing 911 dispatchers after Ronson repeatedly called 911 for non-emergencies.

In late 2007 or early 2008, Ronson began calling Struble at work, leaving voicemail messages, and sending him letters and text messages. Ronson would say she was working as a special agent for the FBI or as a security guard and that she had information regarding crimes in Merced and across the United States. In early 2008 the communications were getting to the point that they were unacceptable to Struble as he was receiving 5 to 7 letters, 30 voicemail messages, and 10 to 12 emails a week. Between early 2008 and December 2008 Struble told Ronson between 10 to 12 times not to contact him, but she continued doing so.

Sergeant Struble received 90 percent of the letters, postcards, and packages from Ronson through the mail at one of two business addresses; others she dropped off personally at the police station and someone would place them in his mailbox. Some of the verbal and written communications included sexual content and alluded to Ronson and Struble getting married. Ronson also sent Sergeant Struble gift certificates, condoms, pornographic pictures, and pictures of herself. In some letters Ronson referred to herself as Gina Struble and to her and Sergeant Struble being romantically involved, having children and getting married. Some letters also referred to a woman named Stephanie Porter.

The tone of the voicemails varied. One voicemail started out by Ronson stating that she loved him and that they were getting married. However, by the end of the message she was calling him "every name in the book" and saying he was "crooked" but

3

that she still loved him and that they were getting married. The text messages would alternate between love and disdain for Struble. From 2007 through 2010 Sergeant Struble received over 500 letters from Ronson. From September 2008 through December 2008, Ronson left him approximately 44 voicemail messages and sent him 20 to 30 letters.

In late November or early December 2008, Struble's brother gave him the Kimber ad that Norman found on the cart at the post office. Struble recognized the handwriting on the ad as Ronson's handwriting. Struble's wife's name was Stephanie and his first reaction to the ad was, "Holy crap. She knows who my wife is." At that point, the red flags went up, all the phone calls and letters started "coming to light," and he began fearing what Ronson was going to do to his wife. The notations, "My Homework Stephanie[,]" "I am a Kimber owner" and "My Best Weapon" caused him to become greatly concerned that his "wife's safety was now in jeopardy by Ms. Ronson." Sergeant Struble further testified that all the contacts from Ronson left him feeling uneasy because he did not know what she was capable of or what she was planning, especially in light of the mass shootings that had occurred involving shooters, who like Ronson, had mental health issues. Although Sergeant Struble testified that his feelings of fear and uneasiness began when he received the Kimber ad, he never testified that he interpreted the notations on the ad as specific threats directed against him or his wife.

When Sergeant Struble discussed the contents of the ad with his wife she became hysterical for about a week and would cry and not go out of the house because she was afraid. Sergeant Struble also began carrying his firearm while off duty and he told his wife that if he ever told her to "grab the kids and run" she should do so without asking questions.

On April 30, 2010, Sergeant Struble obtained a criminal protective order against Ronson.

4

Sergeant Struble never had a dating or social relationship with Ronson.[3]

*The Defense*

Ronson testified she was sitting on a bench at a park doing her "homework" when she wrote on the Kimber ad. She denied mailing the ad. She also testified that when mailing something she puts a delivery address, a return address and a stamp on it. Most of her remaining testimony consisted of confusing, disjointed statements that did not answer the questions she was asked and denying things that were true, or apparently true, such as denying that she knew Sergeant Struble or denying that all the handwriting on the ad belonged to her.

## DISCUSSION

*The Criminal Threats Conviction*

Ronson contends the evidence is insufficient to sustain her conviction for making criminal threats because there was no evidence to support a finding that she intended for the Kimber ad to be delivered to Sergeant Struble. We find the evidence insufficient for several reasons.

> "When the sufficiency of the evidence is challenged on appeal, we apply the familiar substantial evidence rule. We review the whole record in a light most favorable to the judgment to determine whether it contains substantial evidence, i.e., evidence that is credible and of solid value, from which a rational trier of fact could find beyond a reasonable doubt that the accused committed the offense. [Citations.]

---

[3] On cross-examination, Sergeant Struble testified that over the years he learned that Ronson had a mental illness. Although she was unpredictable, she did not have a history of violence with Sergeant Struble and she had never physically attacked him or threatened him. He also acknowledged that the name "Stephanie Porter" was written on some of the letters and other items in the boxes that Struble brought with him to court. Struble never told Ronson his wife's name and, to his knowledge, his wife had never met her.

"As with all challenges to the sufficiency of the evidence, we must begin with a legal question, the minimum factual showing to establish the offense. To prove a violation of section 422, the prosecution had to establish that (1) [appellant] '"willfully threaten[ed] to commit a crime which [would] result in death or great bodily injury to another person"'; (2) [appellant] made the threat '"with the specific intent that the statement ... is to be taken as a threat, even if there is no intent of actually carrying it out"'; (3) the threat (which may be '"made verbally, in writing, or by means of an electronic communication device"') was '"on its face and under the circumstances in which it [was] made ... so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat"'; (4) the threat actually caused the person threatened '"to be in sustained fear for his or her own safety or for his or her immediate family's safety"'; and (5) the threatened person's fear was '"reasonabl[e]"' under the circumstances. [Citations.]

"[S]ection 422 requires that the communication must be sufficient 'on its face and under the circumstances in which it is made' to constitute a criminal threat. This means that the communication and the surrounding circumstances are to be considered together. 'Thus, it is the circumstances under which the threat is made that give meaning to the actual words used. Even an ambiguous statement may be a basis for a violation of section 422.' [Citations.]

"The circumstances surrounding a communication include such things as the prior relationship of the parties and the manner in which the communication was made. [Citation.] Although an intent to carry out a threat is not required, the actions of the accused after making the communication may serve to give meaning to it. [Citation.] And, just as affirmative conduct and circumstances can show that a criminal threat was made, the absence of circumstances that would be expected to accompany a threat may serve to dispel the claim that a communication was a criminal threat. [Citation.]" (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 859-860, fn. omitted.)

Here, the Kimber ad did not contain any specific threats and the only things in the ad that could be interpreted as threats were the images of guns in conjunction with one or more of the notations referencing guns and/or the cryptic notation, "My Homework Stephanie[.]" However, the surrounding circumstances do not support an inference that

6

Ronson intended for these images and any of these notations to be a threat. Many notations clearly were not threats and collectively they expressed many disjointed thoughts, some of which did not make sense including the notation that Ronson was going to purchase a Kimber for Sergeant Struble which contradicted the notation that she was holding one for him.

Additionally, although Sergeant Struble concluded that the name "Stephanie" on the Kimber ad referred to his wife, the evidence does not support this conclusion. Sergeant Struble acknowledged that he never told Ronson his wife's name and the record does not contain any evidence that Ronson knew her name prior to making the notations on the Kimber ad. Further, in her communications with Sergeant Struble, Ronson sometimes mentioned a woman named Stephanie Porter. Thus, Ronson's use of the name "Stephanie" on the ad was not that unusual and does not appear to have been a reference to Struble's wife. Nor was Ronson's use of the word "homework" unusual either because there was evidence in the record that Ronson was, or at least believed she was, attending school and that she did homework. Thus, Ronson's notation, "My Homework Stephanie" provides little if any support for an inference that Ronson intended this cryptic notation to be a threat against Sergeant Struble's wife.

Additionally, although Sergeant Struble testified that the notations on the ad caused him to be "greatly concerned that [his] wife's safety was now in jeopardy by Ms. Ronson[,]" he did not testify that he was concerned because he interpreted any of the notations as a direct threat against him or his wife. Instead, his testimony indicates he became concerned because Ronson was obsessed with him, she obviously had mental health issues, some mass shootings that had occurred involved shooters with mental health issues, some of the notations on the ad indicated Ronson owned a handgun, and the notations also indicated to Sergeant Struble that Ronson knew his wife's name.

7

Further, although Ronson was clearly obsessed with Sergeant Struble, he admitted Ronson had never been violent with or threatened him. And, according to Struble, the most animosity Ronson expressed towards him in her communications was alternating between love and disdain for him in some and calling him "every name in the book" and accusing him of being "crooked" in at least one other. Even so, Ronson would tell Struble that she still loved him and that they were getting married.

Further, there was no evidence that Ronson ever mentioned the Kimber ad to Sergeant Struble or he to her and Struble did not receive the ad in a manner indicating that Ronson intended that he receive it. Additionally, even if Ronson placed the ad in the mail cart she could not have expected that it would be delivered to Sergeant Struble because it was not in an envelope or properly addressed and it did not have any postage. Thus, there was nothing about the surrounding circumstances under which Ronson made the notations on the Kimber ad or Struble's receipt of the ad that indicated that these notations were a threat or that Ronson made these notations with the specific intent that any of them be taken as a threat.

Moreover, "[w]here the threat is conveyed through a third party intermediary, the specific intent element of the statute is implicated. Thus, if the threatener intended the threat to be taken seriously by the victim, he must necessarily have intended it to be conveyed." (*In re David L.* (1991) 234 Cal.App.3d 1655, 1659.)

Here, assuming the ad and the notations on it constituted a threat, there is no evidence from which it can be reasonably inferred that Ronson intended for the threat to be conveyed to Sergeant Struble. Except for the notations being in Ronson's handwriting, there was no evidence that Ronson was the person who actually placed the ad on the post office cart. In any event, the ad was found folded in half on a postal cart with no other items on the cart. It was not in an envelope and it did not have an address for Sergeant Struble, a return address for Ronson, or postage. Notwithstanding Ronson's

8

obvious mental illness, Ronson had previously sent numerous letters, postcards, and packages to Sergeant Struble apparently properly packaged, addressed, and with proper postage because they were delivered by the post office to him. These circumstances negate the notion that Ronson placed the ad in the cart with the intent that it be delivered to Sergeant Struble because she could not have expected that it would actually be delivered when it was so obviously deficient for that purpose. Further, the cart was located on a loading dock outside the rear exit of the post office, there was no other mail in the cart to alert Ronson or anyone else that the cart was used for placing mail in it for delivery, and there was no evidence presented that Ronson was otherwise aware that some people placed their mail on the cart for delivery. Given the foregoing circumstances it can only be concluded that even assuming Ronson placed the ad on the cart, she did not do so with the intent that it be delivered to Sergeant Struble and that her intent in doing so probably was to simply dispose of it as trash.[4]

The evidence is also insufficient to show that the notations made on the ad caused Sergeant Struble to be in sustained fear as required by the fourth element. As discussed above, Sergeant Struble did not testify that he considered the notations at issue a threat or that the threat encompassed in these notations caused him to be in sustained fear. Instead, as noted earlier, the notations made him fear for his wife's safety because one notation indicated to him that Ronson knew his wife's name, Ronson was obsessed with him, she had mental health issues, many of the shooters involved in mass shootings also had mental health issues, and the notations indicated Ronson had a gun. Also, there was no reason for Sergeant Struble to interpret the notations as a direct threat from Ronson

---

[4] Another scenario more likely than Ronson intending for an obviously undeliverable ad to be delivered to Sergeant Struble is that Ronson discarded the ad and someone picked it up and placed it in the empty post office cart thinking it was for trash disposal.

9

against him or his wife because he did not receive the ad in a manner that suggested Ronson intended for him to receive it. Accordingly, we conclude that the evidence is insufficient to sustain Ronson's conviction for making criminal threats.

***The Stalking Conviction***

Ronson contends the evidence is insufficient to sustain her conviction for stalking because there was no evidence that she intended that a "credible threat" actually be conveyed to Sergeant Struble. For the reasons that follow, we agree the evidence is insufficient to sustain Ronson's conviction for stalking.

"The elements of the crime of stalking (§ 646.9) are (1) repeatedly following or harassing another person, and (2) making a credible threat (3) with the intent to place that person in reasonable fear of death or great bodily injury. [Citation.]" (*People v. Ewing* (1999) 76 Cal.App.4th 199, 210.)

"'[C]redible threat' means a verbal or written threat, including that performed through the use of an electronic communication device, or a threat implied by a pattern of conduct or a combination of verbal, written, or electronically communicated statements and conduct, *made with the intent to place the person that is the target of the threat in reasonable fear for his or her safety or the safety of his or her family*, and made with the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her family. It is not necessary to prove that the defendant had the intent to actually carry out the threat." (*People v. Uecker* (2009) 172 Cal.App.4th 583, 593, italics added.)

As discussed in the previous section, the evidence is insufficient to support a finding that Ronson intended for the notations on the Kimber ad to be a threat against Sergeant Struble or his wife or that Ronson had the specific intent that any of these notations be taken as a threat. It follows from these findings that the evidence is insufficient to sustain a finding that Ronson made a credible threat or that she did so with

10

the specific intent of putting Sergeant Struble in reasonable fear of death or great bodily injury within the meaning of section 646.9.

Additionally, as noted earlier with respect to violations of section 422, where the threat is conveyed through a third party intermediary, the specific intent element of that statute is implicated such that if the threatener intended the threat to be taken seriously by the victim he must have intended it to be conveyed to the victim. The crime of stalking requires the making of a credible threat with the specific intent of "*plac[ing] the person that is the target of the threat in reasonable fear for his or her safety or the safety of his or her family ....*" (*People v. Uecker*, *supra*, 172 Cal.App.4th at p. 593, italics added.) By a parity of reasoning it follows that when a threat that violates section 646.9 is delivered through a third party, the threatener must also necessarily intend that the threat be conveyed to the victim. Since we have already concluded the evidence does not support the conclusion that Ronson intended that the ad be delivered to Sergeant Struble, it follows that the evidence here is insufficient to establish the third element of stalking in violation of section 646.9. Accordingly, we conclude that it is insufficient to sustain Ronson's conviction for stalking.

### *The Motion to Dismiss*

In view of our conclusion that the evidence was insufficient to sustain Ronson's convictions for making criminal threats and stalking, we need not address Ronson's contention that the court erred when it denied her motion to dismiss that she made at the end of the prosecution's case.

### DISPOSITION

The judgment is reversed.

11