Filed 12/23/20 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION
IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
SECOND APPELLATE DISTRICT
DIVISION FOUR

| | |
|---|---|
| In re A.G., a Person Coming Under the Juvenile Court Law. | B304063 |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>A.G.,<br><br>    Defendant and Appellant. | Los Angeles County<br>Super. Ct. No. VJ46670'<br><br>ORDER MODIFYING<br>OPINION<br><br>NO CHANGE IN<br>JUDGMENT |

THE COURT*:

The opinion filed December 14, 2020, in the above-entitled matter is ordered MODIFIED as follows:

1. On the disposition page, the panel member, "WILLHITE, Acting P.J." should be removed and replaced with "MANELLA, P.J." as the correct panel member.

2. On the disposition page, the panel member "COLLINS J." should be removed and replaced with "WILLHITE J." as the correct panel member.

There is no change in the judgment.

_____

MANELLA, P.J.   WILLHITE, J.   CURREY, J.

Filed 12/14/20 (unmodified opinion)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re A.G., a Person Coming Under the Juvenile Court Law. | B304063 |
| THE PEOPLE, Plaintiff and Respondent, v. A.G., Defendant and Appellant. | Los Angeles County Super. Ct. No. VJ46670 |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kevin Brown, Judge. Affirmed.

Courtney M. Selan, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Jason Tran and Shezad H. Thakor, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Columbine. Sandy Hook. Virginia Tech. Marjory Stoneman Douglas. These are but a few of a staggering number of American schools where fatal mass shootings have occurred. Seared into the national consciousness, their names evoke a panoply of strong emotions: grief for innocent students and school staff killed or wounded; sympathy for those who loved them; and fear of future tragedies at more schools.

In this case, the juvenile court found defendant A.G., a minor high school student, made criminal threats when he posted a photo of a realistic looking replica gun on his Snapchat account, which was visible to about 60 people he identified as friends. The photo bore the caption, "Everybody go to school tomorrow. I'm taking gum."

On appeal, A.G. contends, as he did below, that he was "joking" when he posted his "story" on Snapchat, and insufficient evidence supported the juvenile court's findings. The juvenile court, however, rejected A.G.'s testimony that he was joking as not credible and inconsistent with what A.G. told a school police detective who investigated the threats. We defer, as we must, to the trial judge's credibility determinations. (*People v. Jones* (1990) 51 Cal.3d 294, 314.) And we note there is nothing funny about threatening to take a gun to school in any event. Because the juvenile court's findings are supported by substantial evidence, we affirm.

# PROCEDURAL BACKGROUND

The Los Angeles County District attorney filed a petition under Welfare and Institutions Code section 602 alleging A.G. made a criminal threat against a minor we will refer to as "D.J." (Penal Code[1] § 422, count 2) and a teacher named Carol Henriquez (§ 422, count 3) and attempted a third criminal threat (§§ 422, 664; count 1). A.G. denied all three allegations. Following an adjudication hearing, the juvenile court found counts 2 and 3 true and dismissed count one for insufficient evidence. The juvenile court ordered A.G. to six months of probation. A.G. timely appealed.

# FACTUAL BACKGROUND

Snapchat is a phone application that, among other things, allows users to post "stories." A story is a photograph or video posted by a Snapchat user. The user can add captions and other effects to the photographs and videos. A user can identify "friends" on Snapchat. Once users become friends, they can see each other's posted stories. The stories expire from the application after 24 hours, but a user can delete the story before the time is up. The stories can be set to be private so they can be only viewed by some people. If the story is public, it can be sent to users who are not friends of the user who posted the story. Snapchat also allows users to send individualized photos or videos directly to people. Snapchat users can also chat with each other within the application and can partake in group chats. Texts, photos, and videos can all be sent using the chat function.

---

[1]     All further statutory references are to the Penal Code.

### A. D.J.'s Testimony

D.J., a high school senior at Linda Marquez School for Social Justice ("Linda Marquez"), had the Snapchat application on her phone. At approximately 9:00 pm on March 3, 2019, she received a screenshot of A.G.'s story through a group chat. The story showed an image of what appeared to be a gun with the caption "Everybody go to school tomorrow. I'm taking gum [sic]." D.J. testified that she was worried when she saw the story because she knew school shootings happened regularly.

D.J. discussed her fear with her friends in the group chat and told them they should tell a teacher. D.J. and other students in the group chat forwarded A.G.'s story to a Linda Marquez teacher, Carol Henriquez, using the Remind application. The Remind application allows teachers and students to communicate via text. D.J. told Henriquez that she did not know the name of the sender because she did not recognize him by his username.

After notifying Henriquez, D.J. looked at the screenshot and realized the sender was her friend on Snapchat. She went to the user's profile and viewed the story. D.J. later discovered the user was A.G. based on the conversation in the group chat and by checking her contact list. D.J. knew A.G. because they previously had a class together during their freshman year. She believed A.G. was a student at her school at the time the story was posted because she also had a class with him earlier that year.

A few hours later, D.J. was alerted that A.G had posted a second story and she went to his profile to view it. The story was a black screen captioned: "Everyone, it wasn't real. I was xanned out." D.J. testified that the second story did not change how she felt. She still believed the first story was a threat to her and

4

others at her school. D.J. stated that she did not recognize the word "gum" when she originally saw the first story. She was instead focused on the photograph of a gun. She also testified the word "gum" did not change how she felt about the image because the letters "m" and "n" are similar and could be easily mistaken.

Henriquez provided police with D.J.'s phone number and they contacted D.J. the same night. D.J. told police about A.G.'s story and that she was worried a school shooting would happen. D.J. went to school the next day and felt nervous.

### B. Carol Henriquez's Testimony

On March 3, 2019, Henriquez was a tenth grade English teacher at Linda Marquez. She received a message from her student, D.J., on the Remind application. The message included the image posted by A.G. Henriquez testified she felt fear, concern, and confusion when she saw the image. She was afraid the image was a threat of a school shooting and felt she and her students were in danger.

Henriquez notified police of the image because, as a teacher, she was a mandated reporter. She testified that even if she was not a mandated reporter, she still would have told police about the image because she was afraid for herself and her students. Henriquez was asked by police to go to the station. Once there, she showed police the image and filed a report.

Henriquez testified her fear and concern was ongoing even after she reported the image to police because she was not sure what would happen the following day at school. Even though Henriquez received the second image posted by A.G., she still felt

afraid because of the commonplace occurrence of school shootings at high schools.

Once Henriquez saw a photo of A.G., she recognized that he had been her student. Henriquez and A.G. had a regular teacher/student relationship and A.G. had never displayed any animosity towards her.

### C. Detective Steve Jeong's Testimony

Detective Jeong is employed by the Los Angeles School Police Department. On the day after A.G. posted his stories, Detective Jeong went to Simon Rodia Continuation School ("Simon Rodia") where A.G. was present. After A.G. waived his *Miranda* rights, Jeong interviewed him. A.G. admitted sending both Snapchat stories. Detective Jeong asked A.G. "why he would do such a thing." A.G. responded, per the Detective, "he likes to see reaction in people, what people might say." A.G. seemed apologetic, and denied any intention to carry out a school shooting or threaten anyone. But he did not say he intended the initial Snapchat story as a joke. Detective Jeong then went to A.G.'s friend's home where the replica gun was located, and examined it. He confirmed it was not an actual gun.

### D. A.G.'s Testimony

A.G. had approximately 60 friends on Snapchat. Some of those friends currently went to school with him, and some had gone to school with him in the past. He had gone years without speaking to some of his Snapchat friends. At the time of the post, A.G. was a student at Simon Rodia Continuation School. He had

attended Linda Marquez until transferring to Simon Rodia earlier that year.

A.G. testified he posted the image on Snapchat because he was being immature, and he meant for the story to be a joke. A.G. further testified he did not intend for the post to be taken as a threat. Instead, he thought his friends would understand the post was a joke because they understood his sense of humor. The gun, which was fake, belonged to A.G.'s friend. He understood people were taking the post seriously because a friend notified him. He posted the second message to calm the situation down. He hoped recipients of the second story would interpret the alleged drug use as an excuse as to why he posted something "dumb." He confirmed he was not on Xanax or any other drug at the time he posted the stories. He was not asked about nor did he volunteer any reason why the caption on the photo said "gum" rather than "gun".

## DISCUSSION

On appeal, A.G. contends counts two and three are unsupported by substantial evidence. Specifically, A.G. contends the evidence failed to establish: (1) he intended his Snapchat post to be understood as a threat; (2) he willfully threatened to unlawfully kill or cause great bodily injury to anyone; (3) he intended to threaten D.J. or Henriquez specifically; (4) any alleged threat was unequivocal or unambiguous to reasonably sustain fear in either D.J. or Henriquez; or (5) any threat to D.J. or Henriquez was sufficiently immediate to place either of them in fear. We reject these arguments.

7

"The same standard governs review of the sufficiency of evidence in adult criminal cases and juvenile cases: we review the whole record in the light most favorable to the judgment to decide whether substantial evidence supports the conviction, so that a reasonable fact finder could find guilt beyond a reasonable doubt. [Citations.]" (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.)

The elements of the crime of making a criminal threat are as follows: "'(1) that the defendant "willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person," (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be "made verbally, in writing, or by means of an electronic communication device"—was "on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety," and (5) that the threatened person's fear was "reasonabl[e]" under the circumstances.' [Citations.]" (*In re George T.* (2004) 33 Cal.4th 620, 630 (*George T.*).)[2]

---

2      Section 422, subdivision (a) provides in pertinent part: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made . . . by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey

"[S]ection 422 requires that the communication must be sufficient 'on its face and under the circumstances in which it is made' to constitute a criminal threat. This means that the communication and the surrounding circumstances are to be considered together. 'Thus, it is the circumstances under which the threat is made that give meaning to the actual words used. Even an ambiguous statement may be a basis for a violation of section 422.' [Citations.]" (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 860 (*Ryan D.*).)

"With respect to the requirement that a threat be 'so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat,' . . . 'The four qualities are simply the factors to be considered in determining whether a threat, considered together with its surrounding circumstances, conveys those impressions to the victim.' [Citation.]" (*George T., supra,* 33 Cal.4th 620, 635.)

Weighing the circumstances surrounding A.G.'s actions, we conclude there was sufficient evidence he threatened D.J. and Henriquez. We therefore affirm the juvenile court's findings. We will address each of A.G.'s arguments in turn.

---

to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety . . ."

***A.*** **The record contains sufficient evidence A.G. intended his Snapchat post to be understood as a threat and that he willfully threatened to kill or cause great bodily injury**

A.G. alleges the evidence failed to show he intended his Snapchat post to be understood as a threat. Instead, he argues the image posted was a joke as evidenced by his use of the word "gum" and because he posted a follow-up image stating the first post was a joke. In a related contention, A.G. argues the record contains insufficient evidence that he willfully threatened to kill or cause great bodily injury.

We reject these contentions. As noted above, the juvenile court rejected on credibility grounds A.G.'s assertion that he intended the first message as a "joke," and we are bound by that determination. In any event, even if A.G. made the post as a joke, a reasonable trier of fact could conclude the joke was made with the intent that it be understood by others as a threat. As A.G. conceded to detective Jeong, he posted the story to see others' reactions. Because people would only react to the story if they perceived it as a threat, a reasonable trier of fact could conclude that A.G.'s post was a willful threat to kill or cause great bodily injury because it suggested he was going to bring the gun to school and harm people with it.

A.G. compares his actions to those of the minor in *In re Ryan D., supra*, 100 Cal.App.4th 854 (*Ryan D.*). The minor in *Ryan D.* created a painting showing a police officer being shot in the back of the head. The painting showed the badge number of a female officer who had previously given the minor a citation. (*Ibid.*) The person shooting the gun appeared to be the minor.

(*Ibid.*) The minor later admitted the officer in the painting was the officer who had given him the citation and that he was the person shooting the gun. (*Ibid.*) The court found the painting failed to constitute a criminal threat because the intent was "ambiguous." (*Id.* at p. 863) The minor took the picture "to class and turned it in for credit[,]" never displayed it to the officer "or put it in a location where he knew she would see it[,]" and did not communicate with her "in any manner to advise her that she should see the painting." (*Id.* at p. 864.) In sum, "the evidence [was] not sufficient to establish that . . . the minor harbored the specific intent that the painting would be displayed to [the officer.]"

In contrast with the minor in *Ryan D.*, A.G's intent was not sufficiently ambiguous to warrant reversal. The evidence permitted the conclusion that A.G. wanted to see a reaction from people who understood his story as a threat to unlawfully kill or cause great bodily injury. A.G. admitted he was friends on Snapchat with people who went to his current school and schools where he was previously enrolled. Students at his then current school, and students and teachers at his former school (whether or not they were aware A.G. had transferred to another school) reasonably could conclude A.G. was threatening to bring a gun to their school the next day.

A.G. also compares his actions to those of the minor in *George T., supra,* 33 Cal.4th 620. In *George T.* the minor wrote a poem which ended with the line: "I can be the next kid to bring guns to kill students at school. So parents watch your children cuz I'm BACK!!" (*Id.* at p. 625.) The minor handed the poem to another student who became frightened. (*Ibid.*) The court found dissemination of the poem was not an unequivocal threat because

it failed to show "immediate prospect that [the] minor would bring guns to school and shoot students." (*Id.* at pp. 638-639.) Instead, the court found the poem "understood in light of the surrounding circumstances" was "'dark poetry'" and a form of literature." (*Id* at p. 638) In sum, the court found the school was "justified in taking action" based on the poem, but the "poem did not constitute a criminal threat." (*Id.* at p. 639, fn. omitted.)

In contrast to the minor in *George T.*, A.G.'s post was specific in that he stated he would "bring gum" (which as D.J.'s testimony confirmed, could be interpreted by a reader to mean gun) to school the next day. He also showed he had the means to commit a school shooting because the image showed what appeared to be a real gun.

In sum, substantial evidence supports the juvenile court's conclusions that A.G. (1) willfully threatened to kill or cause great bodily injury; and (2) intended that his Snapchat post be understood as a threat.

### B. Communication of threat to D.J. or Henriquez

A.G. further argues that he did not specifically intend to communicate a threat to D.J. or Henriquez. In support he argues there was no evidence his initial post would reach Henriquez because Henriquez was not one of A.G.'s friends on Snapchat. A.G. also argues there was no evidence he understood his posts could be screenshot or forwarded to others. A.G. further contends the threat could not have been directed to D.J. or Henriquez because he was no longer a student at Linda Marquez.

In support of these contentions, A.G. cites *George T.*; however, he misstates the rationale of the case. The court in

*George T.* concluded that "the poem was not an unequivocal threat[.]" The court, therefore, "need[ed] not, and d[id] not, discuss minor's contention that he did not harbor the specific intent to threaten the [alleged victims.]" (*George T., supra,* 33 Cal.4th 620, 639.)

A.G. admitted he was a student at Linda Marquez earlier in the school year. D.J. testified she had a class with A.G. earlier in her senior year. Henriquez also testified that A.G. was previously one of her students. Finally, there was no evidence showing A.G. did not understand how Snapchat worked. Considering these circumstances, we determine that by posting the story, A.G. communicated a threat of a school shooting to D.J. and Henriquez. By placing the post on Snapchat, A.G. disseminated the threat to a large group of people, including D.J. It can be inferred from the way Snapchat works that A.G. intended many people to see it, and he must have been aware that anyone who saw it might feel threatened. He also had to be aware that people who saw it might send it to others. In sum, a reasonable trier of fact could have found A.G. intended to threaten an expansive group of people, which included D.J. and Henriquez.

### C.  A.G.'s threat was unequivocal and specific

A.G. contends his post was not sufficiently unambiguous and unequivocal to satisfy section 422. He contends the post was "the definition of ambiguity and equivocation" because the gun was a replica and the caption said he was going to "bring 'gum.'" A.G. adds that there was no animosity between him and anyone in his community and that he was known to joke around. Finally,

A.G. contends D.J. did not see the caption with the word "gum," and that if she did, she might have understood the post was a joke.

"To constitute a criminal threat, a communication need not be *absolutely* unequivocal, unconditional, immediate, and specific. The statute includes the qualifier 'so' unequivocal, etc., which establishes that the test is whether, in light of the surrounding circumstances, the communication was *sufficiently* unequivocal, unconditional, immediate, and specific as to convey to the victim a gravity of purpose and immediate prospect of execution. [Citation.]" (*In re Ryan D., supra,* 100 Cal.App.4th at p. 861, original emphasis.)

D.J. testified the word "gum" did not change her fear of a school shooting because the letters "m" and "n" are close to each other on the keyboard and could easily be mistaken. Considering the surrounding circumstances, including the notoriety of previous school shootings, A.G.'s story was sufficiently specific and unequivocal to convey the threat of a school shooting the next day.

### D. The threat was immediate and reasonably placed D.J. and Henriquez in fear

A.G. finally argues there was no evidence presented that the Snapchat story conveyed an immediate threat. A.G. points to the fact that the post was sent on the night of March 3, 2019, and suggests that if anyone took the post seriously they could have decided to stay away from school. A.G. also contends his school was ten miles from Linda Marquez. In sum, A.G. argues the story

could not reasonably have been construed to communicate a threat of imminent harm to either D.J. or Henriquez.

A.G. contrasts his actions to those of the minor in *In re David L.* (1991) 234 Cal.App.3d 1655 (*David L.)* The minor in *David L.* told a third party that he had a gun and that he was going to shoot the victim the next day. (*David L., supra,* 234 Cal.App.3d at p. 1658.) The court found the threat "was of an immediate, unconditional nature and reasonably caused the victim to undergo sustained fear [which] is all [section 422] requires." (*Id.* at p. 1660.) The court explained section 422 "does not require the showing of an immediate ability to carry out the stated threat[,]" it "requires only that the words used be of an immediately threatening nature and convey 'an immediate *prospect* of execution' (italics added) even though the threatener may have no intent actually to engage in the threatened conduct. The threat is sufficient if it induces a 'sustained fear.'" (*Ibid.*) The court further found "[t]he minor's threat . . . was not 'on its face and under the circumstances in which it [was] made' either conditional or in jest. According to the testimony, it was without equivocation or ambiguity. . . . [¶] The threat was . . . also sufficiently specific. Although it did not communicate a time or precise manner of execution, section 422 does not require those details to be expressed. It is enough to threaten 'death or great bodily injury to another person.' The minor's threat to shoot the victim easily satisfie[d] that element of the statute." (*David L., supra,* 234 Cal.App.3d at p. 1660.)

Here, both D.J. and Henriquez testified that A.G.'s story induced fear that a school shooting would occur the following school day. Neither victim interpreted the post as a joke. Based on the cultural climate where school shootings sadly and

15

tragically happen on a regular basis, it was reasonable that both D.J. and Henriquez sustained fear based on the story. Both D.J. and Henriquez testified they believed A.G. was still a student at Linda Marquez because he had been a student there earlier in the year. Further, both victims believed the gun in the story to be real, and that A.G.'s post indicated he would be taking the gun to school the following day. We therefore find A.G.'s threat was sufficiently specific under section 422.

"The primary goal of the juvenile justice system is to rehabilitate offenders rather than punish them. (Welf. & Inst. Code section 202, subd. (b).) The rationale for this approach is the susceptibility of some juveniles to immature and irresponsible behavior and the greater likelihood they, as opposed to adults, will be reformed by proper guidance and treatment programs. [Citation.]" (*In re R.C.* (2019) 39 Cal.App.5th 302, 310.) Here, the juvenile court took A.G.'s remorse into account when fashioning his rehabilitation program. The court reduced the felony charges to misdemeanors and placed A.G. at home on probation. As the trial judge emphasized, if A.G. successfully completed his probation, his juvenile record could be sealed.

## DISPOSITION

The juvenile court findings are affirmed.

## CERTIFIED FOR PUBLICATION

CURREY, J.

WE CONCUR:

WILLHITE, Acting P. J.

COLLINS, J.