Filed 12/1/20  P. v. Webster CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C089399 |
| Plaintiff and Respondent, | (Super. Ct. No. 18FE019482) |
| v. | |
| BRYAN THOMAS WEBSTER, | |
| Defendant and Appellant. | |

Defendant Bryan Thomas Webster appeals from his conviction of making a criminal threat, contending the verdict is not supported by substantial evidence. Defendant also contends, and the People agree, that his one-year prior prison enhancement imposed pursuant to Penal Code section 667.5, subdivision (b)[1] must be

---

[1] Undesignated statutory references are to the Penal Code.

stricken because of changes in the underlying statutory authority. We affirm the verdict but modify the judgment to strike the enhancement.

## FACTUAL AND PROCEDURAL HISTORY

**The First Threat**

One afternoon, defendant and a female entered a sandwich shop to pick up an order for a food delivery service. Jerry, the proprietor, watching the security monitor from the back, saw the female put several bags of chips in her bag without paying. After defendant and the female left the shop, Jerry followed them to their car and asked for the chips back. The female denied taking the chips, but when Jerry told her he had seen her on camera, she threw the chips at Jerry. Defendant then slammed the car door, turned back towards Jerry with an aggressive demeanor, began to take off his shirt, and got into a combative stance. He approached Jerry, asking him, "what did you say mother fucker?" He also shouted that he had been in jail before, was not afraid of Jerry just because he was big, and he would "fuck [him] up." In response, Jerry threatened to call the food delivery service to get defendant fired.

While defendant and Jerry were yelling at each other, Jerry's employee, Jessica, arrived in the parking lot. Defendant was "aggressive, angry," and like "a loose cannon." Jessica tried, unsuccessfully, to intervene in the dispute. Defendant then walked around his car and yelled to the female, "Hon, get my gun. Get my gun."

Over and over, defendant said "Babe, get my gun. Baby, get my gun." Defendant and the female appeared to look around for something inside his car for approximately one minute. Jerry told defendant he needed to make good adult decisions and repeated, "Don't play with guns, son," until they drove away.

Jerry interpreted defendant's repeated statement "Get my gun" as a threat because "You're getting a gun. You want to use it. That's how I understood that to be." He said he found it "a little unnerving that somebody would want to get a gun over a couple bags of chips" and "absolutely" feared for his safety based on defendant's statements at the

2

time.  The entire encounter, from the time defendant slammed the car door and began yelling at Jerry until he drove away, lasted approximately three minutes.

**The Second Threat**

Shortly after defendant left, the shop's phone rang.  Jessica answered it.  The caller's voice matched defendant's voice.  Defendant asked for Jerry and Jessica told him that Jerry was not there.  Jessica initially told the police that when she asked for defendant's name, he responded, "this was the nigga that's going to shoot Jerry in the head" and then hung up.  At trial, Jessica testified that defendant told her, "Well, tell that nigga I'm gonna shoot him."  Jerry recalled the statement, relayed through Jessica at the time, was "this is the nigga' that's going to come shoot him."

Three days later, defendant returned to the shop and asked Jessica if Jerry was there.  He appeared agitated, nervous, and upset.  She said no, and defendant seemed to become increasingly angry.  Defendant stayed in the shop for another minute, looked around the lobby, and left.

**Jury Verdict and Sentencing**

The jury was given a unanimity instruction with respect to the two separate threats made to Jerry:  (1) the repeated statement, "Get my gun" and (2) the statement to Jessica over the phone, relayed by Jessica to Jerry, that defendant was going to shoot Jerry.  The jury found defendant guilty of making a criminal threat (§ 422), and the trial court subsequently found that defendant had a prior strike (§§ 667, subds. (a), (b)-(i), 1170.12) and had served a prior prison term (§ 667.5, subd. (b)).  The trial court imposed a seven-year sentence, comprised of the upper term of three years for the criminal threat, three years for the strike enhancement, and one year for the prison prior.

3

## DISCUSSION

### I

### Substantial Evidence

On appeal, defendant challenges the sufficiency of the evidence to support his criminal threats conviction. He contends: (1) as to the parking lot incident, there is insufficient evidence as to all five elements of making a criminal threat; and, (2) as to the phone call, there is insufficient evidence he intended Jessica to convey his telephonic threat to Jerry.

*General Legal Background*

To sustain a conviction for criminal threats, the prosecution must establish that: (1) the defendant willfully threatened to commit a crime which would result in death or great bodily injury to another person; (2) the defendant made the threat with the specific intent that the statement was to be taken as a threat, even if there was no intent of actually carrying it out; (3) the threat was on its face and under the circumstances in which it was made so unequivocal, unconditional, immediate, and specific as to convey to the person threatened a gravity of purpose and an immediate prospect of execution of the threat; (4) the threat actually caused the person threatened to be in sustained fear for his or her own safety; and (5) that the threatened person's fear was reasonable under the circumstances. (§ 422; *People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

In reviewing a defendant's challenge to the sufficiency of the evidence, we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence. Substantial evidence is evidence that is credible, reasonable, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

We do not reassess the credibility of witnesses, and we draw all inferences from the evidence that supports the jury's verdict. (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1382.) Unless it is physically impossible or inherently improbable, the testimony

4

of a single witness is sufficient to support a conviction. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) If substantial evidence supports the verdict, we defer to the trier of fact and do not substitute our evaluation of witness credibility for that of the jury. (*People v. Snow* (2003) 30 Cal.4th 43, 66.) If the record supports the jury's findings, our belief that the circumstances might also reasonably support a contrary finding does not warrant a reversal of the judgment. (*People v. Abilez* (2007) 41 Cal.4th 472, 504.)

A. <u>Parking Lot Statements Regarding Gun</u>

Defendant argues that there was insufficient evidence to conclude that defendant's repeated statements to "Get my gun" constituted a criminal threat. Specifically, he argues, the statement was not a threat of a specific crime, directed at Jerry, and made with the specific intent to be taken as a threat; and, that the statement did not convey the requisite immediacy and was not sufficiently unequivocal, unconditional, or specific. Defendant also disputes the sufficiency of the evidence that Jerry was in sustained fear for his own safety. He notes that in addition to claiming he was afraid, Jerry testified he did not believe the threat was real until the phone call to the shop, did not call law enforcement until after the phone call, and did not act "particularly afraid" of defendant.

"A communication that is ambiguous on its face may nonetheless be found to be a criminal threat if the surrounding circumstances clarify the communication's meaning. [Citation]." (*In re George T.* (2004) 33 Cal.4th 620, 635.) The relevant surrounding circumstances include the defendant's proximity to the victim, expressed anger, or use of curse words. (See *People v. Martinez* (1997) 53 Cal.App.4th 1212, 1220.) Further, "[i]n determining whether conditional, vague, or ambiguous language constitutes a violation of section 422, the trier of fact may consider 'the defendant's mannerisms, affect, and actions involved in making the threat as well as subsequent actions taken by the defendant.' " (*People v. Wilson* (2010) 186 Cal.App.4th 789, 808, quoting *People v. Solis* (2001) 90 Cal.App.4th 1002, 1013.) "Defendant's activities after the threat give

5

meaning to the words and imply that he meant serious business when he made the threat." (*Martinez*, at p. 1221, fn. omitted.)

During the confrontation with the victim, defendant was "aggressive" and "combative." Defendant began removing his shirt, cursed at Jerry, warned him that he had been in jail, boasted he was not afraid of Jerry in spite of his size, and threatened to "fuck [Jerry] up." After defendant threatened to "fuck [Jerry] up," he repeatedly demanded his gun from the female. Defendant and the female both appeared to search for the gun in the car. It was reasonable for the jury to infer that defendant's statement that he had been in jail and threat to "fuck [Jerry] up" was a threat to seriously injure the victim. This is particularly so given defendant's subsequent phone call and threat to shoot Jerry, which further reveals defendant's actual intent to shoot Jerry.

It was also reasonable to infer from the entirety of the incident and the surrounding circumstances, including defendant's persistent and repeated demand for his gun and his apparent search for the gun during the height of his conflict with Jerry, that he intended to use the gun to carry out his threat to seriously injure Jerry. And, the fact that defendant was actively looking for the gun, particularly after Jerry warned that he would get defendant fired, supports the inference that this threat to injure Jerry was specific and immediate, and he intended it to be taken as a threat to injure or kill Jerry by shooting him. And again, defendant's intent to shoot Jerry is further illuminated by his statement on the phone that he did, in fact, intend to shoot Jerry, as well as his agitated appearance at the shop several days later, when he asked to see Jerry.

There is also sufficient evidence that Jerry suffered sustained and reasonable fear. Fear "describes the emotion the victim experiences." (*People v. Fierro* (2010) 180 Cal.App.4th 1342, 1349.) "Sustained" means "a period of time that extends beyond what is momentary, fleeting, or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.) "Even if the encounter lasts only one minute, a person who is confronted with a firearm held by an angry perpetrator and who believes his or her death is

6

imminent, suffers sustained fear." (*People v. Culbert* (2013) 218 Cal.App.4th 184, 190-191, citing *Fierro*, at p. 1349.)

Jerry believed defendant was looking for his gun because he wanted to use it. He was unnerved and absolutely afraid during the confrontation. Further, the entire incident, taken from the time defendant began yelling at the victim in the parking lot until the time they drove away, was approximately three minutes. This is evidence from which the jury could reasonably conclude that Jerry experienced sustained fear. A reasonable trier of fact could find that a victim, confronted by an aggressive, combative defendant calling for, and actively searching for, his gun, while threatening to seriously injure him with the gun, and who believes that defendant intends to use that gun on him, reasonably suffers sustained fear. Thus, there was sufficient evidence to support defendant's conviction for criminal threats based on the parking lot threat.

B. Phone Call

As to the telephonic threat, defendant argues the evidence fails to show that defendant intended Jessica to convey his threat to Jerry. Defendant attacks the sufficiency of the evidence here on two grounds: (1) that no reasonable jury could have believed Jessica's trial testimony, which included the specific directive to tell Jerry of the threat, over her other statements, which did not include that directive; and, (2) without that explicit directive to tell Jerry of the threat, the surrounding circumstances of the phone call do not support the conclusion he intended to convey the threat to Jerry.

*Legal Background*

Section 422 does not require the threat be directly communicated by the threatener, to the victim. (*In re David L.* (1991) 234 Cal.App.3d 1655, 1659.) Rather, section 422 is also violated "when a threat is relayed through a third party intermediary selected by the threatener." (*David L.*, at p. 1660.) However, the statute was not intended to "to punish emotional outbursts, it targets only those who try to instill fear in others." (*People v. Felix* (2001) 92 Cal.App.4th 905, 913.) Thus, "mere angry utterances

7

or ranting soliloquies, however violent," are not punishable under section 422. (*People v. Teal* (1998) 61 Cal.App.4th 277, 281) "Where the threat is conveyed through a third party intermediary, the specific intent element of the statute is implicated. Thus, if the threatener intended the threat to be taken seriously by the victim, he must necessarily have intended it to be conveyed." (*David L.*, at p. 1659.)

*Analysis*

Defendant impliedly concedes Jessica's testimony at trial—that defendant instructed her to "tell that nigga I'm gonna shoot him"—would, if true, be sufficient evidence of defendant's intent to convey the threat. However, he argues that no reasonable jury would believe Jessica's recollection at trial over her initial statement to the police, or Jerry's recollection of her statement at the time, neither of which included defendant's explicit instruction to "tell" Jerry of the threat. We disagree.

"In deciding the sufficiency of the evidence, a reviewing court resolves neither credibility issues nor evidentiary conflicts. [Citation.] Resolution of conflicts and inconsistencies in the testimony is the exclusive province of the trier of fact. [Citation.] Moreover, unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young, supra*, 34 Cal.4th at p. 1181.) "The standard for rejecting a witness's statements on this ground requires ' " 'either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences and deductions.' " ' " (*People v. Thompson* (2010) 49 Cal.4th 79, 124.) The concept of inherently improbable goes to the content of the testimony, "i.e., could that have happened?—rather than the apparent credibility of the person testifying." (*People v. Ennis* (2010) 190 Cal.App.4th 721, 729.)

Jessica's trial testimony is largely consistent with her other accounts of defendant's statements in the phone call. Defendant's argument that her trial testimony was unreliable and could not have been believed by the jury relies on inferences drawn from the circumstances of her other statements. This we cannot do. It is not inherently

improbable or physically impossible that defendant told her to tell Jerry of his threat to shoot Jerry. Accordingly, Jessica's testimony that defendant told her to tell Jerry of his intent to shoot him was substantial evidence to support the criminal threat conviction.

Even if the jury relied on Jessica's prior statements, which did not include defendant explicitly instructing her to relay the threat to Jerry, this evidence would still be sufficient to affirm their verdict. Section 422 does not require that the threatener directly instruct the third party to convey the threat to the victim. (See, e.g., *In re David L., supra*, 234 Cal.App.3d at p. 1659 ["The communication of the threat to a friend of the victim who was also witness to certain of the antecedent hostilities supports the inference the minor intended the friend act as intermediary to convey the threat to the victim"].) Indeed, the cases addressing the defendant's intent that a third party convey the threat to the victim examines the entirety of the circumstances, including the defendant's knowledge of the relationship between the parties and the parties' prior interactions. (*Id.* at pp. 1658-1659 [intent to convey where third party witnessed prior altercations between alleged victim and minor and where the defendant knew alleged victim and third party were friends]; *People v. Roles* (2020) 44 Cal.App.5th 935, 944-945 [no intent to where the defendant was unaware the alleged victim and third party communicated with each other and where the parties had previously convened at a single court hearing without incident]; *People v. Felix, supra*, 92 Cal.App.4th at pp. 913-914 [no intent where the defendant confessed his plan to kill his girlfriend to his therapist in confidential session]; *In re Ryan D.* (2002) 100 Cal.App.4th 854, 862-865 [no intent where minor submitted painting of himself shooting a specific police officer for school credit, where officer did not work at the school].)

Here, like in *In re David L.*, Jessica had observed the altercation that preceded the threat. She then received defendant's phone call on the sandwich shop's phoneline shortly thereafter. Even if defendant was not aware that he was speaking to the same employee who witnessed the parking lot altercation, he called Jerry's shop, asked for him

9

by name, and called specifically to make a threat to shoot Jerry, just a few minutes after the dispute in which he threatened to injure Jerry with a gun. Defendant's actions were therefore not consistent with an emotional outburst, but rather with a purposeful and deliberate intent to threaten Jerry. This evidence supports the conclusion, consistent with *In re David L.*, that defendant intended Jessica to convey the message to Jerry, even if the jury did not believe that he directly instructed her to "tell" Jerry of his threat.

Accordingly, substantial evidence supports the criminal threats conviction.

## II

### Prior Prison Term Enhancement

Defendant contends his one-year prior prison term enhancement imposed pursuant to section 667.5, subdivision (b) must be stricken pursuant to the amendment to section 667.5, subdivision (b) by Senate Bill No. 136 (2019-2020 Reg. Sess.), and the People agree.

On October 8, 2019, the Governor signed Senate Bill No. 136 into law. The new law, which became effective on January 1, 2020, amends section 667.5, subdivision (b), which formerly imposed a one-year sentence enhancement for each separate prior prison term or county jail term imposed under section 1170, subdivision (h) where a defendant had not remained free of custody for at least five years. (Former § 667.5, subd. (b).) Pursuant to Senate Bill No. 136, a one-year prison prior enhancement now applies only if a defendant served a prior prison term for a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b). (See Stats. 2019, ch. 590, § 1.)

Because his sentence was not final when Senate Bill No. 136 took effect and because his prior offense was not for a sexually violent felony, we agree with the parties that the amended law applies to defendant retroactively. (See *People v. Vieira* (2005) 35 Cal.4th 264, 306 [defendant entitled to retroactive application of criminal statute that takes effect during the time the defendant has to appeal to the United States Supreme Court]; *In re Estrada* (1965) 63 Cal.2d 740, 742; *People v. Lopez* (2019) 42 Cal.App.5th

10

337, 341-342.)  Therefore, we modify the judgment to strike defendant's one-year prior prison term enhancement and otherwise affirm.  We need not remand this matter for resentencing, as the trial court already imposed the maximum sentence available.  (See *Lopez*, at p. 342.)

## DISPOSITION

The judgment is modified to strike the one-year prior prison term enhancement. (§ 667.5, subd. (b).)  As modified, the judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.


_____/s/_____
RAYE, P. J.


We concur:


_____/s/_____
HOCH, J.


_____/s/_____
RENNER, J.

11