Filed 5/31/22  P. v. Arendas CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C091903 |
| Plaintiff and Respondent, | (Super. Ct. No. 19F2943) |
| v. | |
| PETER JOHN ARENDAS, | |
| Defendant and Appellant. | |

Defendant Peter John Arendas represented himself at trial, after which the jury found him guilty of making criminal threats.  The trial court sentenced him to three years in prison.  On appeal, defendant contends there is insufficient evidence to support his conviction.  We disagree and affirm defendant's conviction.  However, we agree with his alternative argument that the imposition of the upper term was improper in light of new legislation.  We conclude that his sentence must be vacated and the matter remanded to the trial court for resentencing consistent with Penal Code section 1170, as amended by

1

Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3) (Senate Bill 567).[1]

## I. BACKGROUND

Defendant faced a single charge of making criminal threats (§ 422) for his role in a confrontation with James, a security officer at Mercy Medical Center. On the day of the incident, James was called to the emergency room after staff reported that defendant was "acting out." James saw defendant sitting in the lobby, speaking to some women. The women looked like the conversation was making them uncomfortable. When James asked defendant to mind his own business and not speak to others about their medical conditions, defendant became agitated. Defendant raised his voice and called James names.

James testified that although he knew defendant was a patient, aggressive behavior is not tolerated under hospital policy. James asked defendant to leave and defendant refused. Defendant became more aggressive and angrier and James requested assistance from other members of the security team. Defendant repeatedly refused to leave, yelled, swore, and, at one point, took a threatening posture and moved close enough to strike James. When defendant finally agreed to leave, James and the security team followed him to make sure that defendant left the property. Defendant was "extremely irate" with a "complete and total loss of temper." He screamed, yelled general threats of violence, and repeatedly threatened to kill the security staff and their families. As he left, defendant, holding a metal object in his hand, said, " 'I have a fucking knife,' " " 'I will kill you.' " James testified that once he saw that defendant had a knife, he believed defendant's threats to kill him were real and he was fearful. The police later arrested

---

[1] Undesignated statutory references are to the Penal Code.

defendant and found a knife in his possession. Defendant told police that he used the knife against the security officers by opening the blade and holding it down by his hip.

Defendant testified that one of the security guards pulled a weapon on him and defendant moved his knife from his belt to his fanny pack. Defendant acknowledged he was angry when he was asked to leave, but testified that he did not "remember the idiocy of this whole thing" or what he said to James. He said he was not able to "explain a conversation with an incompetent."

The jury found defendant guilty of making criminal threats. In March 2020, the trial court sentenced defendant to three years in prison.

## II. DISCUSSION

### A.    Sufficiency of the Evidence

Defendant claims that the evidence was insufficient to support his conviction. We disagree.

In reviewing a challenge to the sufficiency of the evidence supporting a conviction, we "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.) "[I]t is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' " (*People v. Bean* (1988) 46 Cal.3d 919, 933.)

A criminal threat under section 422 is defined by five separate elements. Our Supreme Court has explained that to prove the offense of making a criminal threat under section 422, "[t]he prosecution must prove '(1) that the defendant "willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person," (2)

3

that the defendant made the threat "with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out," (3) that the threat . . . was "on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety," and (5) that the threatened person's fear was "reasonabl[e]" under the circumstances.' " (*In re George T.* (2004) 33 Cal.4th 620, 630.) The circumstances under which the threat is made, including any prior relationship of the parties and the manner in which the communication was made, give meaning to the actual words used. (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 860.)

Defendant contends his threat to kill the security guards and their families was "too vague as to its possible execution" to satisfy the third element required for a conviction. Defendant contends that there was no evidence defendant intended to execute his threat imminently or that his threat could be carried out with the assistance of anyone in the community. He further contends that he and James were strangers, so the credibility of the threat could not be bolstered by historical events.

Considering the evidence presented at trial, there is ample evidence to support a finding on the third element of the crime of making a criminal threat. Defendant threatened to kill James, members of the security team, and their families. While holding a metal object in his hand, he told James and the security team that he had a knife and he would kill them. A juror could reasonably conclude that defendant made the death threat while holding his knife and that the threat was " ' "so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," ' " and was made " ' "with the specific intent that the statement . . . is to be taken as a threat." ' " (*In re George T., supra*, 33 Cal.4th at p. 630.) Indeed, there is nothing vague, equivocal, or conditional about the

4

threat " 'I will kill you.' " (See *People v. Butler* (2000) 85 Cal.App.4th 745, 752 ["A threat is sufficiently specific where it threatens death or great bodily injury"].) As defendant made this threat while indicating he had possession of a weapon capable of following through on the threat, the threat was immediate and specific and the evidence supports the conclusion that defendant intended the threat to be taken as such. The gravity of the threat is especially pronounced because it was the zenith of defendant's anger and aggressive behavior already on an upward trajectory after he escalated from calling names and taking an aggressive stance against James.

Nevertheless, defendant contends that his threats were not real but merely a result of his loss of temper and argues he should not be punished for his emotional outburst. In support of his contention, defendant cites *In re Ricky T.* (2001) 87 Cal.App.4th 1132. In *Ricky T.*, a teacher opened a classroom door, which struck a 16-year-old student. The student "cursed [the teacher] and threatened him, saying, 'I'm going to get you.' " (*Id.* at p. 1135.) The appellate court concluded that the evidence was insufficient to support the juvenile court's finding that the student had made a criminal threat in violation of section 422. The appellate court reasoned: "[T]he remark 'I'm going to get you' is ambiguous on its face and no more than a vague threat of retaliation without prospect of execution." (*In re Ricky T., supra,* at p. 1138.) "Appellant's statement was an emotional response to an accident rather than a death threat that induced sustained fear. . . . Students who misbehave should be taught a lesson, but not, as in this case, a penal one." (*Id.* at p. 1141.)

Here, in contrast to *In Ricky T.* and contrary to defendant's claim, defendant's threat was not merely an angry outburst in response to an unintentional offense. Instead, throughout the encounter with James, defendant was rude, angry, uncooperative, and aggressive in a public setting. When removed from that setting, defendant's anger only intensified, culminating in the issuance of a death threat while armed with a knife. "Section 422 requires only that the words used be of an immediately threatening nature

5

and convey 'an immediate *prospect* of execution' . . . . The threat is sufficient if it induces a 'sustained fear.' " (*In re David L.* (1991) 234 Cal.App.3d 1655, 1660.) Defendant issued a death threat to the security guards and their families that, accompanied by both his offer of proof that he was armed and the reality that he had a knife, induced sustained fear. Accordingly, substantial evidence supports defendant's conviction for making criminal threats.

B.      *Upper Term Sentencing*

In supplemental briefing, defendant argues and the People agree, that his upper term sentence cannot stand in light of new legislation that provides modified guidelines for the imposition of an upper term sentence. We agree.

At the time defendant was sentenced, former section 1170 provided that when a judgment of imprisonment is to be imposed and a statute specifies three possible terms, "the choice of the appropriate term shall rest within the sound discretion of the court." (Former § 1170, subd. (b).) To inform the sentencing court's decision, the California Rules of Court list various circumstances in aggravation and mitigation.

Senate Bill 567 amended section 1170, effective January 1, 2022. Under the newly-amended version of section 1170, when a judgment of imprisonment is to be imposed and a statute specifies three possible terms, "the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in [section 1170, subdivision (b)(2)]." (§ 1170, subd. (b)(1).) Section 1170, subdivision (b)(2) provides that the trial court may impose a sentence exceeding the middle term "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." Under section 1170, subdivision (b)(3), a trial court can consider a defendant's prior

6

convictions when making its sentencing decision based on a certified record of conviction without submitting the prior conviction to a jury.

Nothing in the statutory language or legislative history of Senate Bill 567 indicates that the amendments to section 1170 were intended to apply prospectively only. Moreover, Senate Bill 567 is an ameliorative statute because it provides for a presumptive middle term absent the presence of circumstances in aggravation that either must be stipulated to by the defendant or proven beyond a reasonable doubt to a jury or in a court trial. (§ 1170, subd. (b)(2).) Enacting restrictions on the trial court's discretionary ability to impose an upper term under section 1170 constitutes an ameliorative change in the law by reducing the possible punishment for certain defendants. (See *In re Estrada* (1965) 63 Cal.2d. 740, 744; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.) Thus, we agree with the parties that under *Estrada*, Senate Bill 567's amendments to section 1170, subdivision (b) apply to defendant's case.

Here, the trial court relied on multiple aggravating circumstances when imposing the upper term. Specifically, the trial court noted that defendant was armed with a weapon when he committed the crime and his violent conduct made him a danger to the community. The court also noted that defendant has "numerous prior convictions," with prior unsatisfactory performance on probation and served prior prison terms.

At trial, defendant admitted he had a knife on him during the incident, but testified that he moved it from his belt to his fanny pack. Assuming without deciding this constitutes an admission as contemplated by section 1170, subdivision (b)(2), this is only one of several factors relied upon by the trial court that could meet the new requirements. The other factors were not compliant with the statute, and we cannot conclude from the record that the trial court would have imposed the upper term based solely on the presence of the knife. For instance, although a sentencing court can rely on certified records of conviction without having to submit the prior convictions to the jury, there is no indication such records were obtained in this case. (§ 1170, subd. (b)(3).)

7

Additionally, the trial court expressly relied on other aggravating circumstances that were not stipulated to by defendant or found true by the jury as required under section 1170, subdivision (b)(2), such as his "danger to the community" or his prior performance on probation.  Thus, we agree with the parties that resentencing is required.

Defendant's sentence is vacated and the matter is remanded for the sole purpose of resentencing, consistent with the guidelines established under newly amended section 1170.

## III.  DISPOSITION

We affirm the conviction.  Defendant's sentence is vacated, and the matter is remanded for resentencing applying the terms of the newly enacted provisions in section 1170.

/S/

RENNER, J.

We concur:

/S/

MAURO, Acting P. J.

/S/

DUARTE, J.

8